MABEL NORFLEET v. FRANK P. HALL, JR.

(Filed 26 April, 1933.)

1. **Highways B c—Driving at speed in excess of statutory maximum is negligence per se, and is actionable when proximate cause of injury.**

    Where there is evidence that defendant was driving his automobile on the highway at a speed of sixty-five miles per hour and that the injury in suit was proximately caused by such excessive speed, it is sufficient to be submitted to the jury on the issue of actionable negligence, since such speed, being in violation of N. C. Code, 2621(46), is negligence *per se,* regardless of the condition of the road, the weather or traffic, and the question of proximate cause is ordinarily for the jury.

2. **Highways B k—Failure of guest to remonstrate as to excessive speed held not contributory negligence under evidence in this case.**

    The fact that plaintiff, who was riding as a guest in defendant's automobile, failed to remonstrate with him as to the excessive speed at which he was driving, is held not to constitute contributory negligence under the evidence in this case, it appearing that defendant increased his speed at the beginning of the journey, and that the car skidded suddenly before

plaintiff had an opportunity to remonstrate with him, and since defendant's wilful and intentional violation of the speed law could not have been anticipated by plaintiff when she entered the car.

**3. Trial F a—**

The trial court's refusal to submit issues tendered will not be held for error where there is no supporting evidence and the issues are not material to the trial. C. S., 584.

STACY, C. J., and BROGDEN, J., dissenting

APPEAL by defendant from *Daniels, J.,* at October Term, 1932, of EDGECOMBE. No error.

This is an action to recover damages for personal injuries suffered by the plaintiff, when the automobile in which she was riding as the invited guest of the defendant, and which he was driving on a State highway in Gaston County, suddenly skidded, ran off the highway, and turned over.

It is alleged in the complaint that "on the night of 1 August, 1931, plaintiff was riding with the defendant in his automobile near the town of Belmont, N. C., on a paved highway leading from said town to Gastonia, N. C., and beyond; that it was a dark and rainy night, and the surface of the highway was wet and slippery; that there was much traffic on said highway at the time, and the weather conditions, the wet condition of the highway, the glare of approaching automobiles, and other circumstances, combined to make driving at the time and place of the catastrophe and injuries hereinafter mentioned hazardous and dangerous."

"3. That notwithstanding the hazard and danger incident to driving on said highway at the time and place mentioned, and in disregard of the rights of the plaintiff and her safety, the defendant was driving his automobile at the negligent and reckless speed of sixty-five miles per hour, when suddenly the defendant lost control of his said automobile and permitted it to skid and turn over, causing permanent injuries to the plaintiff as hereinafter set forth."

"4. That the aforesaid skidding and turning over of defendant's automobile, and the consequent injuries to plaintiff resulted proximately from the negligent acts of the defendant in driving his automobile at an unlawful, reckless and dangerous speed on a wet and slippery highway; that the highway at the point where the skidding occurred was about forty feet wide, and had the defendant been operating his said automobile at a moderate and reasonable speed, the skidding of the automobile would not have been serious, as there was ample space within which to have righted it, but that due to the high rate of speed at which the automobile was driven by the defendant, he completely lost control

of his said automobile, and that as a proximate result plaintiff was seriously and permanently injured as hereinafter set forth."

In his answer the defendant denied that the plaintiff was injured by his negligent operation of the automobile in which she was riding. He alleged that the wheels of his automobile ran onto an oily or slick spot on the highway, which he did not see and could not have seen, and that this caused the automobile to skid and turn over, and thereby to injure the plaintiff. In further defense to the cause of action alleged in the complaint, the defendant alleged in his answer:

"1. That the skidding of defendant's automobile on the slick spot on the cement highway was nothing more than an unforeseeable accident, which is a hazard attending every journey, and is assumed by every journeyer, including the plaintiff. The defendant pleads this assumption of the hazards of the journey by plaintiff in bar of her recovery in this action."

"2. The plaintiff was as thoroughly advertent to the weather conditions, to the type and width of the highway, to the manner in which defendant was operating his automobile and to every other fact which she now alleges as negligence, as was the defendant; and that plaintiff, without protest or remonstrance, but with her signified approval, elected voluntarily to continue her journey, thereby voluntarily assuming the risk of the skidding of the automobile, and all its resulting consequences. The defendant pleads this assumption of risk by the plaintiff in bar of her recovery in this action."

The only evidence offered at the trial, tending to show the circumstances under which the plaintiff was injured, was her testimony. She testified as follows:

"I am 30 years of age, and reside at Tarboro, N. C. During the summer of 1931 I was visiting friends at Charlotte, N. C. I have known the defendant, Frank Hall, for some time. He called to see me frequently while I was visiting at Charlotte, and did what he could to make my visit pleasant.

"On 1 August, 1931, the defendant and I went from Charlotte to Belmont, in his automobile, to visit a friend who was sick. Belmont is sixteen miles from Charlotte. We left Belmont at about 11:30 o'clock at night. I was riding with the defendant in his automobile. He was driving. We were riding in the automobile on the State highway from Belmont to Gastonia. This highway is hard surface and is about forty feet wide. There are four traffic lanes, two for fast driving, and two for slow driving. We were riding on the lane for fast driving from Belmont to Gastonia. The accident occurred when we were about a mile from Belmont. It was about 11:30 o'clock at night and pouring rain. We were not meeting automobiles at the time of the accident. The traffic

was not dense. I knew that the defendant was driving fast—at a speed not less than fifty miles per hour. The automobile skidded suddenly, turned and twisted, and ran off the highway and down the embankment. I was thrown from one side of the automobile to the other. When the automobile stopped, I was so dazed I did not know what had happened. The automobile ran off the right side of the highway. I was sitting on the right side of the automobile. After the accident, the defendant in reply to a question from a by-stander, as to what caused the accident, said: 'I was running too fast. I was driving sixty-five miles per hour.' I knew that the defendant was driving too fast. I did not request him to slow down. I was satisfied with the operation of the automobile by the defendant. The whole story about the accident is that the automobile was running along and suddenly began to skid. That is all that there is to the way the accident happened. That is all I know about it. The defendant and I were engaged in conversation at the time the automobile skidded."

There was evidence tending to show the nature and extent of the injuries suffered by the plaintiff, as the result of the accident and the amount of the damages sustained by her caused by her injuries.

No evidence was offered by the defendant in contradiction of the testimony of the plaintiff as to the facts and circumstances leading up to and surrounding the accident. The defendant, for the purposes of the trial, admitted that these facts and circumstances were as the plaintiff had testified. There was no exception to the evidence offered by the plaintiff tending to show the nature and extent of her injuries, or the amount of her damages.

The issues submitted to the jury were answered as follows:

"1. Was the plaintiff injured by the negligence of the defendant as alleged in the complaint? Answer: Yes.

2. What damages, if any, is the plaintiff entitled to recover of the defendant? Answer: $8,542."

From judgment that plaintiff recover of the defendant the sum of $8,542, and the costs of the action, to be taxed by the clerk, the defendant appealed to the Supreme Court.

*Gilliam & Bond* for plaintiff.
*Spruill & Spruill* for defendant.

CONNOR, J. The uncontradicted evidence at the trial of this action showed that immediately before and at the time the automobile in which the plaintiff was riding, and which the defendant was driving, skidded and ran off the highway, the defendant was driving, knowingly and wilfully, at a greater rate of speed than forty-five miles per hour.

He was driving at a rate of sixty-five miles per hour. He was, therefore, violating the statute, which provides that it shall be unlawful for any person to drive an automobile on a highway in this State at a greater rate of speed than forty-five miles per hour. N. C. Code of 1931, sec. 2621(46). The violation of this statute was in itself negligence. The conditions with respect to the weather, the traffic on the highway, or the surface and width of the highway, were immaterial. The speed at which the defendant was driving his automobile was unlawful, and therefore constituted negligence. All the evidence showed further that this negligence on the part of the defendant was the proximate cause of the skidding of the automobile and the consequent injuries suffered by the plaintiff.

In *Godfrey v. Coach Company*, 201 N. C., 264, 150 S. E., 412, it is said: "The violation of a statute intended and designed to prevent injury to persons or property, or the failure to observe a positive requirement of the law, is under a uniform line of decisions, negligence *per se, Dickey v. R. R.*, 196 N. C., 726, 147 S. E., 15; *Ledbetter v. English*, 166 N. C., 125, 81 S. E., 1066, and when a violation or failure of this kind is admitted or established, it is ordinarily a question for the jury whether such negligence was the proximate cause of the injury. *Stultz v. Thomas*, 182 N. C., 470, 109 S. E., 361." See *Butner v. Whitlow*, 201 N. C., 749, 161 S. E., 389.

There was, therefore, no error in the refusal of the court at the trial of this action to allow the motion of the defendant for judgment dismissing the action as of nonsuit, unless, as contended by the defendant, the plaintiff is barred of recovery because she failed to remonstrate with the defendant as to the speed at which he was driving the automobile in which she was riding as his invited guest, and to request him to lessen the speed, which she knew was too fast. The defendant does not contend that plaintiff contributed to her injuries by her own negligence in riding with him in his automobile under the conditions as to the weather, the traffic on the highway, and its width and surface, as shown by the evidence. His sole contention is that plaintiff assumed the hazards of a journey in an automobile, including the wilful negligence of the driver in violating a statute which prescribes the maximum speed at which an automobile may be lawfully driven on a highway in this State.

It is conceded that there are circumstances under which even an invited guest riding in an automobile driven by his host, owes the duty to himself to remonstrate against the excessive speed at which his host is driving his automobile, and to request him to lessen his speed, and that a failure on the part of such guest to discharge this duty bars his recovery of damages caused by the negligence of his host. *King v. Pope,*

202 N. C., 554, 163 S. E., 447, *Nettles v. Rea,* 200 N. C., 44, 156 S. E., 159. This principle, however, is not applicable to the facts shown by all the evidence in the instant case.

It does not appear from the evidence that plaintiff had an opportunity to discharge the duty imposed upon her by the law to remonstrate with the defendant and to request him to lessen his speed. Plaintiff and defendant had been driving only about a mile, when the defendant increased his speed to sixty-five miles per hour. His negligence, while probably not gross or wanton, was wilful and intentional, and could not have been anticipated by the plaintiff, when she entered defendant's automobile as his guest.

Under the circumstances as shown by all the evidence, plaintiff was not required to remonstrate with the defendant, or to request him to lessen his speed, although she knew that he was driving too fast. The automobile skidded suddenly, before the plaintiff had an opportunity to protest to the defendant as to his speed. It cannot be held that she voluntarily assumed the risk of defendant's wilful, and intentional negligence. There was no error in the refusal of the court to dismiss the action as of nonsuit.

Nor was there error in the refusal of the court to submit the issues tendered by the defendant. There was no evidence tending to support defendant's contentions with respect to these issues, which were not material to the trial. C. S., 584. The judgment is affirmed.

No error.

STACY, C. J., and BROGDEN, J., dissenting opinions.

STACY, C. J., dissenting: This is a hard case. It carries the doctrine of *sic utere tuo ut alienum non lœdas* to its severest implications, and apparently runs counter to the maxim *volenti non fit injuria.* The correct application of sound principles ought not to end in such a clash.

The rules applicable to the facts of the instant case are generally stated as follows:

First, with respect to the negligence of the driver: The owner or operator of an automobile owes the duty to an invited guest to exercise reasonable care in its operation, and not unreasonably to expose him to danger and injury by increasing the hazard of travel. 20 A. L. R., 1014; 26 A. L. R., 1425; 40 A. L. R., 1338; 47 A. L. R., 327; 51 A. L. R., 581; 65 A. L. R., 952. Just what constitutes "increasing the hazard of travel" is not altogether clear from the decisions.

Second, with respect to the contributory negligence of the guest: A person riding in an automobile driven by another, even though not chargeable with the driver's negligence, is not absolved from all personal care for his own safety, but is under the duty of exercising

reasonable or ordinary care to avoid injury, *i. e.,* such care as an ordinarily prudent person would exercise under like circumstances. 18 A. L. R., 309; 22 A. L. R., 1294; 41 A. L. R., 767.

True, in the instant case, the defendant has confused his plea of contributory negligence with assumption of risk, but the facts are set out, and the plaintiff says she "was satisfied with the operation of the car and the way it was being driven. I knew we were going fast—not less than fifty miles an hour. I did not protest or request that he slow down. The whole story about the accident is that the car was running along and suddenly began to skid. That is all there is to the way the accident occurred." Therefore, according to the plaintiff's own testimony, she voluntarily consented to the speed of the car; she knowingly acquiesced in the way it was being driven; she willingly took a chance and lost; she ought not to recover. *Clark v. Travers,* 200 N. Y. S., 52.

A guest who sits beside the host with full knowledge that the car is being driven in excess of the lawful rate of speed, and makes no protest, voluntarily joins in testing the dangers, and is chargeable with contributory negligence. *Curry v. Riggles,* 153 Atl. (Pa.), 325; *Herold v. Clendennen,* 161 S. E. (W. Va), 21.

It is proper to nonsuit the case when the plaintiff's contributory negligence is established by his own evidence, for he thus proves himself out of court. *Wright v. R. R.,* 155 N. C., 325, 71 S. E., 306.

BROGDEN, J., dissenting: I do not dissent upon the ground that the decision of the Court is not in full accord with the precedents heretofore established in this jurisdiction. I do not concur in either the reasoning or the righteousness of the precendents. In the case at bar the plaintiff testified expressly that she was satisfied with the operation of the car, and certainly, she was satisfied with the driver. Hence I see no particular reason why the Court should be more solicitous for her welfare than she was for her own safety.

No court would permit an employee to recover damages for the mere negligence of his employer if the employee selected, according to his own notion and judgment, the tools and appliances with which to perform his work, and also, selected, according to his own notion and judgment the place of the work and the methods of discharging his duties. Notwithstanding, a gratuitous passenger or thumb-rider can voluntarily select, according to his own notion and judgment, the vehicle in which to make the journey, the equipment of same, the driver thereof, and the route of travel. Moreover, if he is injured by the negligence of his own driver, or the defect of his own vehicle, or its equipment, so selected and approved, he may recover damages. Thus, a thumb-rider or guest receives the full blessing of the law, although the same,

under similar circumstances, is promptly denied to a workman who toils and sweats in the field or factory. Lapsing into the muddy language of the back alley, it is rather difficult to be reconciled to the idea that a person can recover damages for being bitten by his own dog.

Our decisions upon the subject are to the effect that the driver of a car owes the duty of ordinary care to a thumb-rider or guest; that is, to furnish a reasonably safe place or vehicle in which to travel and a reasonably safe driver. This is identically the duty that an employer owes to an employee. So that, under the law, when a thumb-rider steps into an automobile, thereupon he becomes the employee of the driver so far as liability is concerned. If there is a defective bolt or screw, unknown to the driver, and as a result there is a collision, the driver pays in terms of his own life or limb and is without legal remedy, but not so with the thumb-rider who sits by his side. He is the favorite of the law, and can recover damages.

The implications arising from the application of liability for injuries to guests has resulted in sharp divergence of judicial reasoning upon the subject, and this divergence within the past few years, has found pen and tongue and voice in the courts and law-making bodies throughout the country.

Obviously the driver of an automobile ought not to be permitted to accept another person as a guest and then proceed to break him to pieces along the route of travel. At the outset, however, it is not to be supposed that the driver is less careful for the safety of the guest than he is for his own for the reason that they usually suffer the same fate. Some courts dealing with the question, in order to approve liability— perhaps as a method of curbing and discouraging reckless driving—have undertaken to work out the rights of the parties upon the theory of treating the rider as a licensee. Thus, if a person enters upon the premises of another, while he must take the premises as he finds it, the owner of the premises must refrain from doing anything to increase the hazard of the licensee while upon the premises. Extending this analogy to automobiles, we have this situation: The automobile is the premises. Hence, when the guest steps into an automobile, he is upon the premises of the owner or driver, and such driver or owner must not, by active negligence, increase the hazard while such licensee is upon such premises. But it seems to me that the analogy disintegrates. The so-called premises is a moving vehicle, changing its position at every instant of time. The guest wants the premises to move, and ordinarily, as in the case at bar, is not averse to fast movement. Thus it would seem that the driver is as much a permanent condition of moving premises as bolts and screws, and valves and tubes. If the rider assumes the risk of such bolts and tubes and valves, it is hard to understand

why he does not also accept the risk of the driver, who must be a permanent part of the "premises" of a moving vehicle, for without the driver, the vehicle would not move at all. The analogy strikes me as an effort to put new wine in old bottles, and the fallacy of that experiment was pointed out about two thousand years ago.

Furthermore, if a thumb-rider or guest is deemed to be a licensee, he is no more than a bare or permissive licensee, because he comes "upon the premises" ordinarily for his own exclusive pleasure and benefit, and in such event is denied recovery, except in automobile cases, unless there was wilful or wanton negligence.

Some courts have denied recovery, by rule of law or bare judicial decision, unless there was evidence of wilful and wanton negligence or gross negligence. This position is now maintained in Massachusetts, Georgia, Virginia, and Washington. See *Massaletti v. Fitzroy* (Massachusetts), 118 N. E., 168; *Slaton v. Hall* (Georgia), 158 S. E., 747; *Boggs v. Plybon* (Virginia), 160 S. E., 77. The Virginia Court in the *Boggs case, supra,* states the principle in these convincing words: "To hold that a guest who, for his own pleasure, is driving with his host, may recover from him for injuries suffered where there is no culpable negligence, shocks one's sense of justice. The driver is often not an expert and makes no implied representations beyond these, namely, that he will not knowingly or wantonly add to those perils which may ordinarily be expected and that there are no known defects in the car which makes its operation particularly hazardous. Beyond this all risks are assumed. While automobiles in themselves may not be dangerous instrumentalities, yet their use carries with them dangers that cannot be forgotten."

The Michigan Court, in *Naudzius v. Lahr,* 234 N. W., 581, 74 A. L. R., 1189, in approving the constitutionality of a statute denying liability to a guest "unless such accident shall have been caused by the gross negligence or wilful and wanton misconduct of the owner or operator of such motor vehicle," etc., said: "It would be threshing old straw to discuss the accepted fact that the motor car has presented social, financial, and governmental problems which justify the Legislature in reasonably classifying it apart from other vehicles in the enactment of laws. . . . Generally, gratuitous passengers are relatives or friends. Exceptionally, they are mere acquaintances, invited chance pedestrians, or those who deliberately solicit rides. Since the rule of liability was announced . . . there has been considerable litigation between guests and hosts. Some between husband and wife or other close relatives has found its way to this Court. . . . In many, probably most, of the cases between relatives or friends the real defendant is an insurance company. Ordinary negligence is not hard to prove if guest and host coöperate to that end. It is conceivable that such actions are not always

unattended by collusion, perjury, and consequent fraud upon the court. While we may accept the contention that paid insurers are not objects of special consideration by the Legislature, it is inadmissible for the court to consider a law from the viewpoint that they are not entitled to a proper trial, and honest determination of liability in a lawsuit. Nor are insurance companies alone interested in the question. The results of verdicts are mirrored in insurance rates, and the law provides a possible reason in the purse of the motor owning public, most of whom carry liability insurance. It is not inconceivable that some passengers who solicit rides may manufacture claims for liability. Groups of young folks, engaged upon a joint enterprise of social enjoyment in a borrowed car, have been known to combine to charge the owner for an accident. The law also has social features. It is well known that drivers hesitate to take neighbors for a ride or to assist on his way a weary traveler because of potential liability for injuries. Few, if indeed any, of these features seem to have manifested themselves in the use of other vehicles than motor cars."

The Supreme Court of the United States, in *Silver v. Silver,* 280 U. S., 117, 74 L. Ed., 221, in upholding the constitutionality of the Connecticut statute, said: "In this day of almost universal highway transportation by motor car, we cannot say that abuses originating in the multiplicity of suits growing out of the gratuitous carriage of passengers in automobiles do not present so conspicuous an example of what the legislature may regard as an evil, as to justify legislation aimed at it, even though some abuses may not be hit."

The reasoning of the Michigan Court and the Supreme Court of the United States is based upon the idea that automobile transportation lies in a new and practical field of law and should be dealt with as such, without attempting to force analogies under the concept of licensor, licensee, invitor, invitee, or whatnot.

Many other states in recent years have by statute denied the right of a thumb-rider or guest to recover against the owner or operator of the car unless there was gross negligence, wilful or wanton misconduct or reckless disregard for the rights of others or intoxication. These states are as follows: California Laws of 1931, Colorado Laws of 1931, chapter 118, Connecticut Laws of 1927, Delaware Laws of 1929, chapter 270, Idaho Laws of 1931, Illinois Laws of 1931, Kentucky Laws of 1930, Indiana Laws of 1929, Iowa Laws of 1927, Kansas Laws of 1931, Michigan Laws of 1929, Montana Laws of 1931, chapter 195, Oregon Laws of 1927, South Carolina Civil Code, 1932, Volume 3, section 5908, Texas Laws of 1931, chapter 225, Vermont Laws of 1929, Wyoming Laws of 1931, chapter 2. Thus there are approximately twenty states that limit recovery by statute and four states that accomplish the same result by rule of law. Therefore, it can no longer be said that the

majority view favors recovery. Indeed, it would seem to be clear that there is a rising tide of judicial and legislative determination to put an end to thumb-rider philosophy of recovery. Certainly, if this philosophy had been known in ancient times, it would doubtless have subjected the Good Samaritan to a damage suit in the event his beast had been a bit unruly or lacking in ordinary surefootedness on the Jericho road. See American Bar Association Journal, April, 1933, page 231; Ill. Law Review, March, 1932, page 829.