MARY GRACE STEGALL v. JOHN WAYLAND SLEDGE, ADMINIS-
TRATOR OF THE ESTATE OF ROBERT CLIFFORD JONES, SR., DECEASED.

(Filed 26 February, 1958.)

1. Automobiles § 37: Evidence § 32—

In an action against the personal representative of the deceased
owner to recover for injuries received in an automobile accident,
plaintiff may not testify that intestate was driving the car at the
time of the accident or that she had requested him to slow down.

2. Automobiles § 41p—

The identity of the person driving at the time of an accident may
not rest on conjecture and surmise, but plaintiff must offer evidence
tending to establish the identity of the driver as a legitimate inference
from the established facts.

3. Same—

The identity of the driver of a car at the time of the accident in suit
may be established by circumstantial evidence.

4. Same—Circumstantial evidence that intestate was driving at the time
of the accident held sufficient to be submitted to the jury.

Plaintiff's evidence tended to show that the car involved in the acci-
dent was owned by intestate, that a driver's license had been applied
for in his name, that plaintiff did not know how to drive, had no
driver's license, and that only plaintiff and intestate were in the car at
the time of the accident in suit. Plaintiff's evidence further tended to
show that from the physical facts at the scene the car was being
driven recklessly at excessive speed, that the car turned completely
over on the highway, leaving marks on the highway and shoulders for
some 580 feet, and that intestate was thrown therefrom and was found
some 50 feet to the right of and parallel with the automobile, and
plaintiff was found lying almost under the right front door with her
head toward the front of the car. *Held:* The evidence is sufficient to
permit, but not to compel, a jury to draw the legitimate inference
from the established facts that defendant's intestate was driving at
the time of the wreck, irrespective of the position in which the bodies
were found, it being a legitimate inference from the facts here that
the occupants were thrown around in the car before they were thrown
out of it.

5. Automobiles § 41a—

The physical facts at the scene of the accident in this case *held* to
warrant a reasonable inference that the operator of the car was driv-
ing it at an excessive speed in violation of G.S. 20-141(b) 4, and was
driving it recklessly in violation of G.S. 20-140, so as to take the
issue of negligence to the jury.

6. Automobiles § 6—

A violation of G.S. 20-140 is negligence *per se.*

APPEAL by plaintiff from *Bone, J.,* September Term 1957 of
CRAVEN.

Civil action to recover damages for personal injuries alleged-ly caused by the actionable negligence of defendant's intestate, Sergeant Robert Clifford Jones, Sr.

The defendant's answer is a general denial of the complaint's allegations.

From a judgment of nonsuit entered at the close of plaintiff's evidence, plaintiff appeals.

*Owens & Langley for plaintiff, appellant.*
*Whitaker & Jeffress and Dunn & Dunn for defendant, appellee.*

PARKER, J. This is a summary of plaintiff's evidence: On the night of 5 November 1956 State Highway Patrolmen P. M. Herring, Jr. and H. W. Pridgeon went to the scene of an auto-mobile wreck on Highway No. 70 some seven miles east of the City of New Bern. They and an ambulance arrived at the same time. The highway at the scene makes a curve, described by Patrolman Herring as an "S" curve. When the patrolmen ar-rived, they saw a Ford Ranch Wagon standing on its wheels in a pasture 20 or 25 feet from the highway on its west side. At another place in the Record the evidence is the automobile was on the east side of the highway. Appellee's brief states the automobile was 20 to 25 feet from the western edge of the paved highway. The tires on the automobile had a good tread, and were standing up. The automobile was a 1956 model, bear-ing North Carolina License No. ZP-5781, and its motor num-ber was M6NR-142343.

The top of the automobile had been ripped up and folded back, and on the right-hand corner of the top where it had been torn loose from the post was blood, and what appeared to be flesh. Both sides of the automobile and the top were bent in. It was a two-door car. Both doors were open, and "torn down completely, crumpled." To some extent the front end was dam-aged. The windshield and windows were torn out. The Ranch Wagon was a complete wreck. It was torn up from all angles.

Patrolman Herring testified as follows in respect to tracks or marks leading away from the automobile: "There were tracks or marks leading away from the automobile. Beginning from the Ranch Wagon which was over off the highway in a pasture, leading back east towards the highway, beginning here with scuff marks; the dirt was torn up, small saplings were torn down and going on further back a barb wire fence near the highway was torn down. The fence more or less came around here, posts, several of those posts were torn down between the fence and the highway which is more or less a drain ditch or gully with fresh scuff marks, dirt thrown up and portions of

chrome and glass lying in this vicinity along here; getting back on the highway there were scuff marks on the highway and paint. The color of the paint on the highway was blue, I believe, and the color of the car was blue. And after the scuff marks from the highway leading back to the shoulder was more scuff marks of a—more or less dirt thrown back to the east side of the highway, which is on the opposite side from which the car was. Then the tracks go further on up the highway and then finally straightened out more or less to a straight tire mark to the point where it entered the highway further on back. I measured the length of these marks from the place the automobile was sitting to the place the marks began as they came off the northeast side of the highway, and those marks were 580 feet long."

This is Patrolman Pridgeon's testimony as to the marks: "There were marks leading away from the station wagon. The ground between the station wagon and the road was dug out in holes; the dirt. was torn up in different spots; the wire fence was wrapped around the station wagon, part of the wire from the fence and there was several holes gouged out in the ditch or little drain beside of the highway there, between it and the road. The car had come to rest on the inside of the curve, when I got there. Continuing with my description of the marks, from the highway ditch or drain back up on the highway there was several scuff marks and the shoulder of the road was torn by, like dug out holes and across the highway there was skid marks, four sets of marks, four marks going back across the highway and two down the other side of the road where the shoulder, the grass had been torn on the shoulder. I had an opportunity to measure the length of these marks that I found from the place the station wagon was sitting to their end, and I found them to be 580 feet according to the tape. They were 580 feet from the station wagon back up on the road, across the highway and down the other shoulder to where they came off the highway. As to the condition of the road and the weather on this night, the night of November 5, 1956, it was dry. That was a black top highway."

Patrolman Herring testified this was a two-door car. He further testified that almost under the right front door, which was torn loose and crumpled down, plaintiff was lying more or less parallel, with the automobile with her head toward its front. She was seriously injured.

The body of defendant's intestate, Sergeant Robert Clifford Jones, Sr., was lying about 50 feet from the Ranch Wagon with his head in the same direction it was headed. His body was lying in line with the automobile and its marks. Both bodies were

on the right-hand side of the Ranch Wagon when the patrolmen arrived at the scene. Sergeant Jones was lying on his back. He had no cuts on his face. He was foaming at the mouth and nose. Patrolman Herring testified, "his shoes were off, one of them I believe." He died that night.

About 11:00 o'clock p.m. the same night Dr. Joseph F. Patterson, Jr. saw plaintiff in St. Luke's Hospital in New Bern.

Plaintiff testified she lives in Kinston, she met Sergeant Jones in the middle of September 1956, and on 5 November 1956 he was at her home about 7:30 or 7:45 o'clock.

The mother of plaintiff testified that her daughter prior to 5 November 1956 had never owned an automobile, had never had an operator's license, and could not drive an automobile.

The step-father of plaintiff testified that to his knowledge plaintiff could not drive an automobile.

Plaintiff testified that prior to 5 November 1956 she had never driven an automobile.

Plaintiff offered in evidence from the North Carolina Department of Motor Vehicles, Registration Department, a duly certified copy of an application by defendant's intestate for the issuance of a certificate of title to him for a Ford Ranch Wagon, Motor Number M6NR-142343—the same Ford Ranch Wagon the patrolmen saw at the scene wrecked. This application was sworn to and subscribed by Robert Clifford Jones, Sr., before a Notary Public in Kinston on 31 October 1956, and in it he stated that he purchased the car new from Paul Motor Company, Charleston, South Carolina, in March 1956, and is now the owner of it. The department issued to him a certificate of title on this automobile on 6 November 1956, the day following his death.

Plaintiff assigns as error that the trial court, upon objection of the defendant, refused to permit plaintiff to testify as to who was driving the automobile at the time of its wreck, as to the speed of the automobile just prior to its wreck, as to whether she said anything to the driver as to the speed of the automobile. The witness whispered her replies to the court reporter. If she had been permitted to answer, she would have testified, that defendant's intestate was driving the automobile at the critical moment at a speed of 85 miles an hour, that she was looking at the speedometer, and that she asked him to slow down. The trial court properly excluded this testimony by authority of *Boyd v. Williams,* 207 N.C. 30, 175 S.E. 832; and *Davis v. Pearson,* 220 N.C. 163, 16 S.E. 2d 655. Appellant's counsel in their brief very frankly concede that the trial court's rulings were in accordance with these decisions, but they request us to overrule these two cases. Such a request we decline to grant.

A crucial question is whether the physical facts at the scene of the wreck, and the attendant facts and circumstances, which are circumstantial in nature, when considered in the light most favorable to the plaintiff, permit the legitimate and reasonable inference that defendant's intestate, Sergeant Jones, was driving the automobile at the time of the wreck.

Inferences as to who was driving the automobile at the time of the wreck cannot rest on conjecture and surmise. *Parker v. Wilson,* 247 N.C. 47, 100 S.E. 2d 258; *Sowers v. Marley,* 235 N.C. 607, 70 S.E. 2d 670. The inferences permitted by the rule are logical inferences reasonably sustained by the evidence, when considered in the light most favorable to the plaintiff. *Whitson v. Frances,* 240 N.C. 733, 83 S.E. 2d 879. To make out this phase of the case plaintiff must offer evidence sufficient to take the question of whether defendant's intestate was driving the automobile at the critical moment out of the realm of conjecture and into the field of legitimate inference from established facts. *Parker v. Wilson, supra.*

Plaintiff did not offer any direct evidence showing that defendant's intestate was driving the automobile at the time of the wreck. She is not required to do so. Circumstantial evidence alone is sufficient to establish this crucial fact. *Bridges v. Graham,* 246 N.C. 371, 98 S.E. 2d 492, and cases there cited.

Plaintiff's evidence shows that Sergeant Jones was the owner of the Ford Ranch Wagon, and her evidence permits the legitimate inference that he and plaintiff were the only persons in it at the time of the fatal wreck. However, proof of Sergeant Jones' ownership of the automobile and the inference from the evidence that he was riding in it at the time of the fatal wreck, standing alone, do not cause a rebuttable presumption or inference to arise that he was driving his automobile at the time of the wreck. *Parker v. Wilson, supra.*

Plaintiff's evidence shows these facts: Sergeant Jones purchased this Ford Ranch Wagon new in March 1956, and was its owner at the time of the wreck. This permits a reasonable inference that he knew how to drive it. Plaintiff had never had an operator's license to drive an automobile, and cannot drive one. The automobile stopped in a pasture 20 or 25 feet from the highway. The length of the marks from the place the automobile was sitting to the place the marks began as they came off the northeast side of the highway was 580 feet by measurement. The automobile was a complete wreck: torn up from all angles. Its top had been ripped up and folded back. Both its sides and the top were bent in. The windshield and windows were torn out. Both doors were open, and "torn down completely, crumpled." The automobile's color was blue, and there

was blue paint on the highway. Patrolman Herring testified that when he arrived at the scene the Ranch Wagon was standing up on its wheels, "all of the tires on the automobile were standing up, none of them were flat, and they had good tread on them."

The facts in evidence permit the legitimate inference that the automobile was being driven at tremendous speed, and that it turned over on the highway, then righted itself, and travelled some 580 feet off the highway before coming to rest on its wheels. The completely wrecked condition of the automobile, the blue paint on the highway, and the marks behind the automobile at the scene permit the fair inference that Sergeant Jones and plaintiff were thrown around in the automobile before they were thrown out of it.

Considering in the light most favorable to the plaintiff, the physical facts at the scene, all the attendant facts and circumstances, the evidence that plaintiff cannot drive an automobile, and that only the bodies of plaintiff and Sergeant Jones were seen at or near the wrecked automobile, it is our opinion, notwithstanding the position in which the patrolmen saw the bodies of plaintiff and Sergeant Jones when they arrived, that plaintiff has offered sufficient evidence to permit, but not to compel, a jury to draw the legitimate inference from established facts that defendant's intestate was driving the Ford Ranch Wagon at the time of the fatal wreck. The facts in *Parker v. Wilson, supra,* are readily distinguishable.

The completely wrecked condition of the Ranch Wagon and the physical facts at the scene of its wreck warrant a reasonable inference by a jury that the operator of it was driving it at an excessive speed in violation of G.S. 20-141(b) 4, and was driving it recklessly in violation of G.S. 20-140. *Aldridge v. Hasty,* 240 N.C. 353, 364, 82 S.E. 2d 331, 341; *Riggs v. Motor Lines,* 233 N.C. 160, 63 S.E. 2d 197; *Etheridge v. Etheridge,* 222 N.C. 616, 24 S.E. 2d 477; *Powers v. Sternberg,* 213 N.C. 41, 195 S.E. 88. A violation of G.S. 20-141 (b) 4 is negligence *per se. Norfleet v. Hall,* 204 N.C. 573, 169 S.E. 143; *Albritton v. Hill,* 190 N.C. 429, 130 S.E. 5. A violation of G. S. 20-140 is negligence *per se. Crotts v. Transportation Co.,* 246 N.C. 420, 98 S.E. 2d 502. The inference that the wreck of the Ranch Wagon resulted from the want of due care is reasonable, and is more than mere speculation or conjecture.

It is for a jury, not a court, to draw inferences of negligence. We think that plaintiff's evidence will permit, but not compel, a jury to draw legitimate inferences that defendant's intestate was driving the Ford Ranch Wagon at the time of the wreck at a speed in excess of the maximum speed limit authorized by

G.S. 20-141 (b) 4, and recklessly in violation of G.S. 20-140, that such operation of the Ranch Wagon was negligence *per se*, and the proximate cause of plaintiff's injuries. That makes it a case for the jury. The twelve will say how it is.

Reversed.