385 F.2d 369
 Grady G. EDWARDS, Administrator of the Estate of Geneva
Edwards Todd, Deceased, Appellant,
v.
Thomas Butler MAYES and J. D. Hollingsworth, t/d/b J. D.
Hollingsworth Machine Shop, Appellees.
Norman E. TODD, Administrator of the Estate of Henry Ashley
Todd, Deceased, Appellant,
v.
J. D. HOLLINGSWORTH, d/b/a J. D. Hollingsworth Machine Shop,
and Thomas Butler Mayes, Appellees.
 Nos. 10359, 10360.
 United States Court of Appeals Fourth Circuit.
 Argued May 6, 1966.
Decided Nov. 3, 1967.
 
 William C. Morris, Jr., Asheville, N.C. (Lamar Gudger, Williams, Williams & Morris, and Gudger & Erwin, Asheville, N.C., on brief), for appellants.
 William C. Meekins, Asheville, N.C. (Meekins & Roberts, Asheville, N.C., on brief), for appellees.
 Before BOREMAN and J. SPENCER BELL,* Circuit Judges, and FIELD, District Judge.
 BOREMAN, Circuit Judge:
 
 
 1
 Grady Edwards, Administrator of the estate of Geneva Edwards Todd, and Norman E. Todd, Administrator of the estate of Henry A. Todd, brought actions against the defendants, Thomas Butler Mayes and J. D. Hollingsworth, doing business as Hollingsworth Machine Shop, for the wrongful deaths of their respective decedents. The Todds, husband and wife, were killed at 11:30 P.M. on November 14, 1963, when Hollingsworth's tractor-trailer, driven by Mayes, collided with their 1949 Dodge which was stalled in the right-hand lane of a four-lane interstate highway.
 
 
 2
 Jurisdiction in each case was based on diversity of citizenship and an amount in controversy in excess of $10,000.00. At trial the jury, upon special interrogatories, found that the deaths of the Todds were not caused by the negligence of the defendants. Plaintiffs appeal on the grounds that the court failed to instruct the jury (1) that a violation of G.S. 20-141(b) of the Code of North Carolina pertaining to excessive speed was negligence per se; and (2) that the operation of a vehicle within the specified speed limit at a speed greater than reasonable under the circumstances in violation of G.S. 20-141(a) and (c) also constitutes negligence per se. Defendants contend that no objection was made to the court's charge, that no such instructions were offered, and, finally, that if the court's failure to so instruct the jury was error it was harmless because decedents were contributorily negligent as a matter of law. We conclude that the court failed to properly instruct the jury and that such failure was plain error necessitating a new trial notwithstanding plaintiffs' failure to request such instructions or to object to their omission.
 
 
 3
 The accident occurred on Interstate 85 in Davidson County, North Carolina, three miles south of Lexington. Interstate 85 is a four-lane, divided highway running generally in a north-south direction. Looking south from the point of collision, the highway is straight for 1.6 miles. The maximum speed in the area of the collision is 65 miles per hour. The Todds had left Asheville, North Carolina, at 4:00 P.M., bound for Raleigh. They had been traveling on Interstate 85 in a northerly direction. Mr. Todd was driving and his wife and infant child were riding beside him on the front seat.
 
 
 4
 Mayes, called as an adverse witness by the plaintiffs, testified that he was driving at a speed of 45 to 50 miles per hour, that the lights on the Todd car were not showing, that he did not see the car until he was within a very few feet of it, and he did not have time be apply his brakes.
 
 
 5
 Witness Freitag testified that about twenty minutes prior to the accident he had been traveling north and had narrowly avoided collision with an old car which was stopped in the righthand lane with no lights showing; that the collision with the defendant's truck took place near the spot where he had seen the car and that when he heard of the accident he reported these facts.
 
 
 6
 Patrolman Plummer of the North Carolina State Police testified that he had observed the Todd car an hour or an hour and a half prior to the accident. It was parked on the shoulder of the road with a truck behind it and at that time the lights were showing on the Todd car but seemed weak and dim. Plummer further testified that he was later at the scene of the accident; that after the bodies were removed from the Dodge he had an opportunity to observe the light switch; that the switch was turned to the 'first notch'; that in his experience, the position of the switch indicated that the parking lights had been turned on.
 
 
 7
 Charles Bullard was a witness to the accident. He stated in a deposition offered by the defendants and admitted in evidence that he had been proceeding north on Interstate 85 when he noticed the Todd vehicle near an exit. To its rear, in a pushing position, was a 1953 Chevrolet occupied by a friend of Bullard's. Bullard stopped his car near the Todd vehicle and alighted. Marvin Bowman, who had been riding with Bullard, drove the Bullard car home. Bullard inquired of the Todds what the trouble was. Mrs. Todd told him that the car would not start and asked that it be pushed. Bullard, using the Chevrolet, pushed the Todd car a short distance without success and then pulled the Chevrolet off the road, to the right, and stopped alongside the Todd car which remained on the paved portion of the highway. Bullard again spoke to the Todds and told them of a truck stop a short distance up the road, offering to take them there. Mr. Todd, appearing to Bullard to be drunk, mumbled something and then asked to be pushed again. Bullard then pushed the Todd vehicle five or six hundred feet and realized it would not start. Again the Todd car remained on the highway. Bullard again drove the Chevrolet from the paved portion of the roadway and spoke to the Todds, telling them that their car should be off the highway. However, at Todds' renewed request, Bullard pushed their car for about one-half mile and again pulled the Chevrolet from the roadway when the Todd car would not start. He stated that he again advised the Todds that their car should be removed from the paved highway but apparently Mr. Todd was drunk and unable to talk and Mrs. Todd merely smiled. Bullard was preparing to make another attempt to start the Todd car by pushing when he saw the headlights of Hollingsworth's tractor-trailer approaching from the south. Horrified, he stood by as that vehicle collided with the rear of the Todd car and pushed it a distance of 225 feet. When the vehicles came to a halt the tractor was atop the Dodge which was completely crushed from the rear and the top. Mr. and Mrs. Todd were killed instantly. A half-empty fifth of Vodka was found on the front seat near Mrs. Todd.
 
 
 8
 On adverse examination by plaintiffs' counsel, Bullard, in his deposition, further stated he had told Patrolman Plummer, when questioned by that officer at the scene of the accident, that the lights on the Todd car were lighted when he first began the pushing procedures but at the time of the accident the lights were not burning although the lights of the Chevrolet were on at all times. When recalled to the withness stand, Officer Plummer testified that he spoke to Bullard after the accident and Bullard told him that the lights of the Todd car were on at the time of the collision.
 
 
 9
 Witness Clark testified that, after the accident, he examined the battery in the Todd car at the scene; that the battery was not damaged in any way and that it was 'dead' at the time he tested it.
 
 
 10
 There was expert testimony based upon an autopsy which indicated that Mr. Todd was intoxicated.
 
 
 11
 Mayes stated that he left Greenville, South Carolina, and was destined for Henderson, North Carolina, where he was to deliver several textile machines. A tachograph installed on the truck to record the speed of the vehicle indicated that at the time of the accident the truck was traveling at a speed of 70 miles per hour. However, there was a serious conflict in the evidence as to the actual speed of the truck. In addition to Mayes' testimony that he was driving at a speed of 45 to 50 miles per hour there was evidence that the tachograph had not been operating during the entire trip. A person familiar with reading such a device testified that the tachograph indicated that the truck had been traveling at 70 miles per hour for the entire trip. Defendants argue that this was impossible because it had taken the truck three hours and ten minutes to go from Greenville to the scene of the accident, a distance of 146 miles; that if the vehicle had been driven at a speed of 70 miles per hour it would have traveled 210 miles in that period of time and thus would have been sixty miles beyond the scene of the accident.
 
 
 12
 In a diversity case the federal courts follow the applicable state law which, in this case, is the law of North Carolina. The maximum speed on interstate highways within North Carolina is fixed by statute. G.S. 20-141 provides in pertinent part:
 
 
 13
 '(b) Except as otherwise provided in this chapter, it shall be unlawful to operate a vehicle in excess of the following speeds:
 
 
 14
 '(5) Whenever the State Highway Commission shall determine upon the basis of an engineering and traffic investigation that a higher maximum speed than those set forth in subdivisions (1), (2), (3) and (4) of this subsection is reasonable and safe under the conditions found to exist * * * upon any part of a highway designated as part of the interstate highway system * * *, said Commission shall determine and declare a reasonable and safe speed limit, not to exceed a maximum of 65 miles per hour, * * *.'
 
 
 15
 The speed limit, at the place of the accident on Interstate 85, was 65 miles per hour.
 
 
 16
 It is well settled by an unbroken line of North Carolina Supreme Court decisions that the operation of a motor vehicle in excess of the applicable limits set forth in G.S. 20-141(b) is negligence per se. Smart v. Fox, 268 N.C. 284, 150 S.E.2d 403 (1966); Rudd v. Stewart, 255 N.C. 90, 120 S.E.2d 601, 607 (1961); Stegall v. Sledge, 247 N.C. 718, 102 S.E.2d 115 (1958); Norfleet v. Hall, 204 N.C. 573, 169 S.E. 143 (1933); Albritton v. Hill, 190 N.C. 429, 130 S.E. 5 (1925).
 
 
 17
 Where there is evidence from which the jury could draw a reasonable inference that the defendant was driving at a speed in excess of the statutory limit, the court must instruct the jury, without special request therefor, that if it finds from the evidence that defendant was operating its motor vehicle in excess of the speed limit such conduct would constitute negligence per se. Smart v. Fox, supra, 150 S.E.2d at 404-405; 405; Bulluck v. Long, 256 N.C. 577, 124 S.E.2d 716, 723 (1962); Stegall v. Sledge,supra, 102 S.E.2d at 119. A failure to so instruct the jury is prejudicial error which requires reversal and a new trial. Smart v. Fox, supra, 150 S.E.2d at 405; Bulluck v. Long, supra, 124 S.E.2d at 723; Stegall v. Sledge, supra, 102 S.E.2d at 119.[1]
 
 
 18
 In Smart v. Fox, supra, plaintiff had parked his truck partly on the shoulder of the easterly lane of a two-lane highway; however, two feet of the vehicle's width extended into the northbound traffic lane. Defendant, traveling north in a truck pulling a trailer, came upon plaintiff's vehicle, applied the brakes, and swerved into the southbound lane to avoid a collision; but the defendant's rig jackknifed and struck the front of plaintiff's truck, causing damage to that vehicle and injuring plaintiff. At trial, plaintiff offered evidence to show that defendant had been operating his vehicle in excess of the speed limit as set by G.S. 20-141(b). No request was made that the jury be instructed that a violation of the statute constituted negligence per se. Nevertheless, the North Carolina Supreme Court held that the court's failure to give the instruction was prejudicial error and ordered a new trial.
 
 
 19
 In the instant case there was evidence that Mayes was driving at an excessive speed. The tachograph registered 70 miles per hour at the time of the accident and Mayes admitted that he did not see the Todd car until he was virtually upon it. The Todd car was pushed a distance of 225 feet and was completely crushed, top and rear. The North Carolina Supreme Court has held that the physical facts at the scene of a collision may disclose that an operator of a vehicle involved in the accident was traveling at an excessive speed. Aldridge v. Hasty, 240 N.C. 353, 82 S.E.2d 331, 341 (1954); Riggs v. Akers Motor Lines, 233 N.C. 160, 63 S.E.2d 197, 200 (1951). Upon the evidence in this case the court should have instructed the jury as to the effect of a violation of G.S. 20-141(b)(5).
 
 
 20
 The court failed also to instruct the jury that a violation of G.S. 20-141(a) and (c) was negligence per se. G.S. 20-141(a) provides 'No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing.' G.S. 20-141(c) provides that the fact that a driver is operating a vehicle at a speed within the statutory limit does not relieve him of his duty to exercise due care.
 
 
 21
 In Cassetta v. Compton, 256 N.C. 71, 123 S.E.2d 222 (1961), Mrs. Compton, the defendant, while driving in an area with a 35 mile per hour limit struck Joseph Cassetta, a seven-and-one-half-year-old child who was riding his tricycle in the street. There was no evidence that Mrs. Compton was driving in excess of the speed limit. However, the court, while reading subsections (a) and (c) of G.S. 20-141 to the jury, told the jury that a violation of these provisions was only a circumstance to be considered in determining negligence. The North Carolina Supreme Court ordered a new trial, holding that 'Under G.S. 20-141, subsections (a) and (c), if a person drives a vehicle on a highway at a speed greater than is reasonable and prudent under conditions then existing, such person is guilty of negligence per se, that is, as a matter of law, notwithstanding the speed does not exceed the applicable maximum limits set forth in G.S. 20-141(b).' 123 S.E.2d at 224. The court noted that the question of whether Mrs. Compton was driving at a speed greater than was reasonable under the circumstances was to be determined on the basis of what she could and should have seen, not on the basis of what she actually saw and stated that 'any speed may be unlawful if the driver of a motor vehicle sees, or in the exercise of due care could and should have seen, a person or vehicle in his line of travel. Murray v. Wyatt, 245 N.C. 123, 128, 95 S.E.2d 541.' 123 S.E.2d at 226.
 
 
 22
 Applying this rule it would appear that the jury should have been instructed also on the effect of violations of G.S. 20-141(a) and (c). Under proper instruction it would have been possible for the jury to conclude that defendant, Mayes, in the exercise of due and reasonable care could or should have seen the Todd vehicle stopped on the highway. While such an inference was permissible it, of course, was not required.
 
 
 23
 Defendants in the case at bar contend that even though the lower court erred in failing to properly instruct the jury, there was no prejudice because the decedents were contributorily negligent as a matter of law. It is argued that Mr. Todd was contributorily negligent in parking his vehicle without lights and in being intoxicated and that Mrs. Todd remained in the car after she realized that she was in a position of danger. Defendants cite G.S. 20-134 which requires that a vehicle stopped on a highway at night must have lights on. A violation of this provision is negligence per se. Correll v. Gaskins, 263 N.C. 212, 139 S.E.2d 202 (1964); Scarborough v. Ingram, 256 N.C. 87, 122 S.E.2d 798 (1961). See United States v. First Citizens Bank & Trust Co., 208 F.2d 280 (4 Cir. 1953). However, it is for the jury to decide whether, upon the evidence, the Todd car was parked without lights and whether such violation of the statute was a proximate cause of decedents' injuries.
 
 
 24
 In Correll v. Gaskins, supra, 139 S.E.2d 202, defendant's car collided with the rear of plaintiff's car which was stopped on a rural road. Plaintiff contended that his lights were on but defendant stated the car was parked without lights in violation of G.S. 20-134. The lower court did not instruct the jury that a violation of G.S. 20-134 was negligence per se. The appellate court reversed, holding that under the circumstances defendant was entitled titled to the following instruction:
 
 
 25
 'If the jury find by the greater weight of the evidence that plaintiff stopped his car and permitted it to stand, without lights, on the paved portion of Washington Lane in defendant's (right) lane of travel, such conduct on the part of the plaintiff would constitute negligence as a matter of law; and if the jury find by the greater weight of the evidence that such negligence was a proximate cause of the collision and plaintiff's injuries, the jury is instructed to answer the contributory negligence issue, 'Yes." 139 S.E.2d at 204.
 
 
 26
 It must be emphasized that the court did not hold that the jury's finding that plaintiffs violated the statute compels a verdict for defendants. The abovequoted instruction approved in Correll is a two-step process which requires the jury to first find a violation of the statute and then that the violation was a proximate cause of injury. See Annotation 67 A.L.R.2d 92, 108, for a discussion of other cases applying this principle.
 
 
 27
 In the instant case the evidence offered by defendants would indicate that the Todd vehicle was stopped without lights. This evidence was contradicted by the testimony of Officer Plummer, from which the jury could permissibly draw the inference that the lights were on. There was a material issue of fact for the jury's resolution. However, even if the jury were to conclude that the lights were not on this would not command a verdict for defendants, for the jury must go further and find that decedents' failure to have the lights on was a proximate cause of their deaths. In this regard the fact that Mr. Freitag was able to avoid the Todd vehicle which, according to his statement, had no lights, would seem entitled to some weight and might well warrant the inference that Mr. Todd's violation of G.S. 20-134 was not the proximate cause of the accident. If such were the case, Mrs. Todd's failure to leave the vehicle would not bar recovery by her estate.
 
 
 28
 Defendants also argue that plaintiff Henry Todd violated G.S. 20-138 which prohibits anyone who is under the influence of intoxicating liquor to drive along the highway, and that Mrs. Todd was contributorily negligent in continuing to ride with him. Violation of this subsection is negligence per se. Southern National Bank of N.C. v. Lindsey, 264 N.C. 585, 142 S.E.2d 357 (1965); Davis v. Rigsby, 261 N.C. 684, 136 S.E.2d 33 (1964). However, whether Mr. Todd was intoxicated was a question for the jury. On this point the court instructed the jury to consider this issue only as to 'what effect it may have had on the individual charged with parking the automobile and leaving it where it was.' Moreover, the jury would have to find that Mr. Todd's drunkenness, and not defendants' negligence, was a proximate cause of the accident, before finding that the Todds were contributorily negligent. Day v. Davis, 268 N.C. 643, 151 S.E.2d 556, 559 (1966). Furthermore, the jury would also have to find that Mrs. Todd had opportunity to realize that her husband was intoxicated and that her failure to get out of the car was a proximate cause of her death. We cannot say on the basis of these facts that Mr. and Mrs. Todd were contributorily negligent as a matter of law. These are questions for the jury under proper instructions. The jury did not specifically pass upon decedents' contributory negligence. It was found on special interrogatories that the Todds were not killed by the negligence of the defendants and the interrogatories concerning contributory negligence were not answered by the jury.
 
 
 29
 We reach the conclusion that the jury was not properly instructed on vital issues in these cases.
 
 
 30
 Reversed and remanded for new trials.
 
 
 
 *
 Judge Bell participated in the hearing and concurred in the disposition of the case but died before the opinion was prepared
 
 
 [1]
 Plaintiffs contend that after the court had charged the jury they objected for the reasons now assigned here. While finding that their objections were insufficient to clearly bring this matter before the court, as provided by Rule 51 F.R.Civ.P., this court may take notice of plain error arising from the trial court's failure to charge the jury correctly