Ted BROWN, Plaintiff,

v.

**PARK TRANSPORTATION COMPANY,**
a Corporation, Defendant-Appellant,

Casualty Reciprocal Exchange, a Corporation,
Defendant,

William Kersting, d/b/a William Kersting
Trucking Company, Wayne E. Erwin, and
Continental Casualty Company, a Corpora-
tion, Defendants-Respondents.

No. 31706.

St. Louis Court of Appeals.

Missouri.

Sept. 25, 1964.

Motion for Rehearing or for Transfer to
Supreme Court Denied Oct. 26, 1964.

————◆————

Heneghan, Roberts & Cole, John J. Cole,
St. Louis, for defendant-appellant.

Moser, Marsalek, Carpenter, Cleary &
Jaeckel, Paul S. Brown, St. Louis, for
defendants-respondents.

**JAMES D. CLEMENS, Special Judge.**

This appeal concerns a cross-action between the lessor and the lessee of a truck to determine which of them is liable for the plaintiff's damages. The plaintiff was injured while the truck was being unloaded. His claim was settled for $10,000. The lessor and the lessee each paid half that amount, and each incurred $1,000 in legal expenses. By their cross-claims each then sought to recover its $6,000 from the other. The trial court found in favor of the lessor and against the lessee, and the lessee appeals.

The Laclede Steel Co. had sold an order of steel reinforcing rods for delivery to the Wilcox Construction Co. at a highway construction site near Blythedale in Harrison County. Laclede hired appellant Park Transportation Company, a contract carrier, to deliver the steel rods. Instead of using one of its own trucks and drivers, Park hired the respondent Kersting, a common carrier, and his driver, Erwin, to make the delivery. A written truck lease was prepared by Park and signed by driver Erwin for Kersting. Park's permit numbers and corporate name were affixed to the truck. Erwin drove to Laclede's plant and the steel rods were loaded. He then drove to the construction site near Blythedale, where he met plaintiff, one of the contractor's partners. Part of the rods were unloaded by hand, and the truck went on a few hundred feet to unload more. Here, the plaintiff was injured. A bundle of rods was too heavy to be unloaded by hand, so a bull-dozer was brought up to assist. A chain was connected to the bundle and the bull-dozer so it could pull the bundle off the truck. Plaintiff Brown was standing on the truck. He and Erwin decided that the truck should pull farther ahead to take the slack out of the chains before the bull-dozer began pulling the bundles off the truck. As the truck moved forward, Brown was injured.

The crux of the case is whether at the time of plaintiff's injury, when the truck was being unloaded, the truck was still under lease to appellant Park or had by then reverted to its owner, respondent Kersting. We look now to the written instrument whereby Kersting leased his truck to Park. Omitting non-essentials, and emphasizing pertinent parts, here is the lease:

"NOW, THEREFORE: in consideration of the sum of $1.00 and for other good and valuable consideration, IT IS HEREBY AGREED that for a period of time, effective 6 P.M. (CST) the 30th day of July, 1958, and *concluding with the discharge of the consignment at the DESTINATION specified* herein, this LESSOR shall lease the above described motor equipment to this LESSEE *for use in transporting products* as this LESSEE will specify for a single, ONE WAY, trip originating at the premises of this LESSEE at 1717 Park Ave., St. Louis 4, Missouri; then loading at the time and under the circumstances as instructed by this LESSEE at: Laclede Steel Co., Madison, Ill., and then proceeding only, and directly, *to the following DESTINATION(S):* Mo. State Hwy. Blythdale, Mo., and to the premises of the consignee(s) *as specified in the bill(s) of lading* where this *LESSOR will attend to the proper unloading of the cargo,* obtain essential clear receipts therefor and dispatch such receipts, along with the #3 equipment receipt and LESSEE'S identification property, to this LESSEE by the most expedient lawful method this LESSOR may employ. IT IS MUTUALLY UNDERSTOOD AND AGREED THAT:— (1) This trip lease completely *terminates at the destination specified herein* and that any movement made by this LESSOR *after completing said delivery* is the sole responsibility of this LESSOR; and * * *." (Emphasis ours.)

Another written instrument and another part of the lease may shed light on the issue here: the bill of lading and Erwin's signed relinquishment of the truck lease.

At Laclede's plant driver Erwin was given Laclede's bill of lading consigning the steel rods to the "Missouri State Hwy. Dept. % Wilcox Construction Co." The bill of lading covered two lots of steel rods, one for a bridge over Stone Quarry Creek, and one for a bridge over Indiana Creek, and this notation: "DELIVERY INSTRUCTIONS: DRIVER IS TO MEET CONTRACTOR AT BLYTHEDALE, MO. PROJECT BEGINS 4 MILES NORTH OF BLYTHEDALE ON ST. AND RUNS EAST OF RT. 50 STATION 0 PLUS 00 IS AT RT. ST." After all rods were unloaded, the construction company's agent signed the bill where it read "Received in good condition except as reported on the back of this form." On the back is printed *"IMPORTANT NOTICE TO CONSIGNEE* Check carefully the items unloaded from the truck at destination against the list of material shipped * * *." There are no notations on this side. The other writing is a release form on the bottom of the truck lease. It acknowledges "accomplishment" of the truck lease at 11 A.M. Although so written, it was not actually signed by Erwin until after the unloading was completed several hours later.

■ Appellant Park concedes, and we agree, that the lease is not ambiguous. So, in construing the lease, we will adhere to these fundamental principles: The parties' intention is to be determined from what they said in the lease itself, and there is no reason to resort to extrinsic matters. Kalen v. Steele, Mo.App., 341 S.W.2d 343 (1, 3); Needles v. Kansas City, Mo., 371 S.W.2d 300(2). The intention of the parties is to be ascertained from the instrument as a whole, and not from isolated parts. 17A C.J.S. Contracts § 297; Cook v. Tide Water Associated Oil Co., Mo.App., 281 S.W.2d 415(8); and Rickey v. New York Life Ins. Co., 229 Mo.App. 1226, 71 S.W.2d 88(5). We will determine the parties' intention from the language used, giving that language its usual meaning. Liberty Storage Co. v. Kansas City Terminal Warehouse Co., Mo.App., 340 S.W.2d 189(4, 5);

Robichaux v. Group Hospital Service, Inc. of Kansas City, Mo.App., 379 S.W.2d 874 (1). We note that the lease refers to the terms of the bill of lading as to the "destination(s)" named therein. The bill of lading calls for delivery to the two bridge sites. So, we will consider this as a part of the lease. Hamilton Fire Ins. Co. v. Cervantes, Mo.App., 278 S.W.2d 20(2); 17 A C.J.S. Contracts § 298.

■ Park contends that by its terms the lease covered only transportation of the products, and terminated the moment the truck arrived at the construction site. This contention is based on the clause that the time of the lease has its beginning at a stated hour and "concluding with the discharge of the consignment at the destination specified." This interpretation could hold true only if we can say that the discharge of the consignment occurred before the cargo was unloaded. We believe that a carrier has not discharged its consignment until it either unloads the consignee's goods or gives the consignee an opportunity to do so himself. That is the very purpose of transportation. See 13 C.J.S. Carriers § 67 and note 67. Further, the lease required that Kersting " * * * attend to the proper unloading of the cargo * * *." It also said that Kersting would be responsible for any movement " * * * after completing said delivery * * *." Kersting was not relieved of his obligation under the lease the moment he arrived with the loaded truck at the construction site. Until the cargo was taken off his truck at both the two unloading points he had not "discharged the consignment." We hold that the reasonable meaning of the truck lease is that it was terminated only when the truck had been unloaded at its destination. Hence, plaintiff was injured at a time when Kersting's truck was under lease to Park. Appellant Park contends against this construction of the lease on further grounds: Park points to the fact that Erwin signed the release form stating that the terms of the lease had been accomplished at 11 A.M. at Blythedale. This was not signed until after the cargo

had been unloaded several hours later. At most, this would be a conclusion of law by Kersting's driver as to when the terms of the lease had been accomplished. Park also argues that its own liability insurance excluded coverage for accidents occurring during unloading. These and other arguments advanced are founded on extrinsic matters. We will not consider them in construing the lease in view of Park's admission and our finding that the lease is not ambiguous.

 Park further says that even if the truck lease was in effect when plaintiff was injured and that Park was thereby liable to the plaintiff, still Park's liability was only passive and derivative. So, Park contends, Park would be entitled to be indemnified by Kersting. Park cites State ex rel. Algiere v. Russell, 359 Mo. 800, 223 S.W.2d 481(3); Kansas City Southern Ry. v. Payway Feed Mills, Inc., Mo., 338 S.W.2d 1(1); and 42 C.J.S. Indemnity § 21, where the rule is tersely stated: "* * * an independent contractor guilty of wrongdoing is liable, not only to the person injured, but to any other person who is legally liable therefor * * *." To avoid the application of this principle to him, Kersting relies on a provision of the truck lease whereby Park was obligated to procure liability insurance to protect Kersting from all liability arising out of the operation of the leased truck. That clause read:

> "This LESSOR [Kersting] will provide, at his expense, for the full maintenance and operation of said equipment, including all insurance costs which he may require for his protection *with the exception of* cargo, *personal injury to others* and damage to the property of others *which is assumed by this LESSEE* [*Park*] for the period only while this lease is in effect * *." (Our emphasis.)

The trial court held that by this Park was obligated to protest Kersting against any claims arising out of operation of the truck

while the lease was in effect, and by failing to do so Park is now precluded from seeking indemnity from Kersting.

We have already acknowledged the rule that a principal may have indemnity from his agent for losses sustained by the principal because of the agent's negligence. But "* * * in a private contract, where the parties stand on a substantially equal footing, one may legally agree to indemnify the other against the results of the indemnitee's own negligence." Kansas City Power & Light Co. v. Federal Construction Corp., Mo., 351 S.W.2d 741(1); 42 C.J.S. Indemnity § 7. So, indemnity may not be had for a loss where the principal (Park) has agreed to protect the agent (Kersting) by procuring insurance against such loss. This problem arose in the case of Monsanto Chemical Co. v. American Bitumuls Co., Mo., 249 S.W.2d 428. There, Monsanto delivered its chemicals to the Cal-Spray company for processing, and agreed "to carry adequate insurance to cover all stocks of materials held by Cal-Spray for Monsanto's account." The chemicals were destroyed by fire through Cal-Spray's negligence, and Monsanto sued Cal-Spray to recover its loss. Recovery was denied, our Supreme Court saying (l. c. 431–432) ·

> "* * * The stipulation whereby Monsanto was to carry adequate insurance must have been for the benefit of both of the parties to the agreement; otherwise, there would have been no occasion for the stipulation. (Citing cases.) It is true the stipulation did not provide that Cal-Spray should not be held responsible for its negligence in causing a fire, but the stipulation provided that Monsanto was to provide insurance against hazards, manifestly including fire, the proximate or immediate cause of the loss of Monsanto's property. To the extent of Monsanto's stipulated obligation to insure against loss by fire, the insurance stipulated had the effect of satisfying Monsanto's claim against Cal-Spray for its negli-

gence. Newport News Shipbuilding & Dry Dock Co. v. United States, supra [4 Cir., 34 F.2d 100]."

We follow this, and hold that by its agreement to furnish liability insurance to protect Kersting, and its failure to do so, Park is precluded from seeking indemnity from Kersting. Park has cited numerous cases limiting the Monsanto case, but we find none of them detracts from the point we have ruled here.

Park advances other arguments which would be forceful if it had prevailed in its initial contention that plaintiff was injured after termination of the truck lease. We have ruled that initial point against Park, and no further attention need be given Park's dependent contentions.

We conclude that Park is liable for the plaintiff's injuries because they were inflicted while Kersting's truck was under lease to Park, and that Park may not have indemnity against Kersting because Park agreed to protect Kersting by providing liability insurance against such loss, but failed to do so. The judgment below was for the right party and should be affirmed. It is so ordered.

RUDDY, P. J., and WOLFE, J., concur.

ANDERSON, J., not participating.