**ACME LAUNDRY, TOWEL & LINEN SUP-PLY COMPANY, a Missouri Corporation, Plaintiff-Respondent,**

v.

**WASHINGTON SQUARE, INC., a Missouri Corporation, Defendant-Appellant.**

No. 33250.

St. Louis Court of Appeals.

Missouri.

July 15, 1969.

David G. Dempsey, Dempsey & Dempsey, Clayton, for defendant-appellant.

Wayne L. Millsap, Bamburg & Millsap, St. Louis, for plaintiff-respondent.

CLEMENS, Commissioner.

In this declaratory judgment action the plaintiff tenant (Acme) and the defendant landlord (Washington Square) seek an interpretation of their lease concerning the amount of rental due by Acme. The dispute arises from two paragraphs in the lease. One requires Acme to pay a "minimum annual rental"; the other requires Acme to pay an "additional percentage rental" based on its gross sales but grants Acme, conditionally, a credit for rental paid in excess of five percent of its gross sales. This credit clause is the crux of the case. The trial court found Acme was entitled to a credit for all rent it had paid in excess of five percent of its gross sales, and Washington Square appeals.

The facts are undisputed. Washington Square operates a shopping center in St. Louis county. One of its tenants had operated a laundromat but failed, and Washington Square took over the equipment. Later, Washington Square sold the equipment to Acme and negotiated a lease for the same space. The document prepared by Washington Square was a multi-page form lease, mostly in print, with blanks filled in for the variable items. To clarify the rental paragraphs we paraphrase them and omit irrelevant words:

*Minimum Annual Rental*

6(a) Acme agrees to pay to Washington Square as minimum annual rental the sum of $4,320, payable in advance in equal monthly installments of $360 each on the first day of each month during the said term.

*Additional Percentage Rental*

6(b) In addition to the rentals specified above, and as a part of the total

rental to be paid, Acme covenants and agrees to pay to Washington Square as percentage rental for each lease year of the term hereof, the following amounts: five percent of all gross sales in excess of $11,250 during each three-month period during the term of this lease. If at the end of any twelve-month lease year the total amount of minimum rent and percentage rental paid by Acme exceeds five percent of all gross sales made by Acme during such lease year, Acme shall receive a credit equivalent to such excess, which excess credit may be deducted by Acme from the next rental payments due under this lease.

It is the last sentence—the credit clause—that provoked the parties' dispute at the end of the year. Each month Acme had paid the $360 minimum rent, a total of $4,320. Acme's gross sales never exceeded the $11,250 quarterly amount, so it paid no "additional percentage rental". Acme's gross sales for the year amounted to only $22,983, and five percent of that is $1,149.-15. Since the minimum rentals paid by Acme ($4,320) exceeded five percent of its gross sales ($1,149.15) by the sum of $3,170.85, Acme contended it was entitled to deduct that amount from "the next rental payments due under this lease."

The trial court so ruled, finding that Acme was entitled to deduct $3,170.85 from the $4,320 minimum rental it had paid, thereby reducing Acme's net rental obligation to $1,149.15. That amount is five percent of its gross sales.

█ In its brief Acme flatly contends that the minimum rental paragraph imposes no obligation and that the credit clause in the "additional percentage rental" paragraph fixes its rental at five percent of its gross sales, whatever the amount of sales might be. Washington Square contends this was not the parties' intent, and we agree. Had the parties so intended they could have said so in very few words; they would not have needed paragraph 6(a) setting the minimum annual rental at $4,-320, nor would they have had to calculate the minimum quarterly sales at $11,250 in paragraph 6(b). Each of those amounts would have been irrelevant if Acme's rent were to be a flat five percent of its gross sales.

The lease imposes two distinct obligations on Acme, one fixed and the other conditional. By paragraph 6(a) Acme agreed to pay $4,320 "as minimum annual rental". "Minimum" means the least quantity; thus, the $4,320 amount was fixed and unconditional.

By paragraph 6(b) Acme further obligated itself, conditionally. It agreed that "in addition to" the minimum rental it would also pay an amount of rental equal to five percent of its gross sales that exceeded $11,250 in any quarter year. This conditional obligation was minimized by a further condition. It is obvious that Acme's gross sales might exceed $11,250 in one quarter and fall below that amount in another quarter. Washington Square agreed to give Acme a credit, one that would squarely meet that contingency. By the last sentence of paragraph 6(b) Washington Square agreed that if at the end of any twelve-month lease year the total amount of minimum rent and percentage rental paid by Acme exceeded five percent of all gross sales made by Acme during such lease year, Acme would get a credit equivalent to such excess, which excess credit could be deducted by Acme from the next rental payments due under the lease.

This credit clause is an integral part of paragraph 6(b) and logically grants Acme a contingent credit against "additional percentage rental" imposed by that paragraph.

As noted, Acme contends that the credit clause in paragraph 6(b) should apply to reduce the $4,320 minimum annual rental imposed by paragraph 6(a). To so interpret the lease would ignore the word "minimum" in paragraph 6(a), would ignore the words "in addition to" in paragraph 6(b), and would ignore the word

"and" in the phrase "the total amount of minimum rent and percentage rental paid", in the credit clause. This interpretation would violate the principle that wherever possible meaning must be given to every word and phrase of a contract. (Nichols v. Pendley, Mo.App., 331 S.W.2d 673 [5].) As used in paragraph 6(a) the words "minimum annual rental" obligate Acme, without condition or diminution, to pay $4,320 rent a year. As used in paragraph 6(b) the words "in addition to" obligate Acme, conditionally, to pay more than the minimum annual rental.

Since Acme's interpretation of the credit clause in paragraph 6(b) would result in no fixed minimum rent, but only in rent equal to five percent of gross sales, that interpretation would require us to completely ignore paragraph 6(a). Obviously that was not the parties' intent; we must assume they intended to give it meaning. (Celatron, Inc. v. Cavic Engineering Co., Mo.App., 432 S.W.2d 794 [1].)

 To determine the meaning of the credit clause in paragraph 6(b) we read it in light of paragraph 6(a). This, on the principle that one part of a contract may illuminate another, and does so here. The parties' intention must be ascertained from the lease as a whole, not from isolated parts. (Brown v. Park Transportation Co., Mo.App., 382 S.W.2d 467 [2].)

So considering the lease we conclude, as to the instant dispute between the parties, that the credit clause was a part of paragraph 6(b) and referred to an allowable credit on account of potential percentage rental, not a credit against minimum rental payments required to be paid by paragraph 6(a).

The judgment is reversed and the cause remanded with directions to enter a new judgment declaring that plaintiff has no right to credit against the minimum annual rental required to be paid by plaintiff to defendant by paragraph 6(a) of their lease, and that defendant be discharged with its costs.

PER CURIAM:

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court. Accordingly, the judgment is reversed and the cause remanded with directions to enter a new judgment declaring that plaintiff has no right to credit against the minimum annual rental required to be paid by plaintiff to defendant by paragraph 6(a) of their lease, and that defendant be discharged with its costs.

WOLFE, P. J., and JAMES H. KEET, Jr., Special Judge, concur.