Frederick HAYS, a Minor by His Father and Next Friend Paul R. Hays, Appellant,

v.

WESTERN AUTO SUPPLY COMPANY, a Corporation, Respondent.

No. 51586.

Supreme Court of Missouri, Division No. 1.

Sept. 12, 1966.

Mitchell & Meise, John W. Mitchell, Clyde G. Meise, Kansas City, Mo., and George M. Hare, Independence, Richard B. Globus, Kansas City, of counsel, for appellant.

James W. Benjamin, Kenneth E. Jones, Rogers, Field & Gentry, Kansas City, for respondent.

HOUSER, Commissioner.

Frederick Hays, proceeding by his father and next friend, sued Western Auto Supply Company, a corporation, and H. Lee and Reba Van Cleave, for $75,000 damages for personal injuries. A riding power mower, sold by Western at one of its retail stores, purchased and owned by H. Lee Van Cleave, and operated by Jimmy, the 8-year-old brother of Frederick Hays, backed up against plaintiff, who was between 2 and 3 years of age, knocked him down and ran over his heel, foot, leg, groin and side, inflicting serious cuts and injuries. At the close of plaintiff's evidence the court sustained motions for directed verdicts filed by Mrs. Van Cleave and Western and overruled Mr. Van Cleave's motion for a directed verdict. The case against Mr. Van Cleave apparently was then settled. Judgment was entered against plaintiff as to all three defendants. Plaintiff has appealed from the action of the court in sustaining the separate motion of Western for a directed verdict. No appeal has been taken with respect to the rulings or judgment entered in favor of defendants Van Cleave.

The negligence charged against the retailer, Western Auto Supply Company, was that of selling the power mower to the public and to the Van Cleaves without adequate warning to the purchasers of the highly dangerous qualities of the machine, and that the machine was improperly designed in that it was built omitting guards around the blade, particularly in the rear section, thereby exposing the unguarded blade and causing or contributing to cause plaintiff's injury. Western was further charged with having failed to take the highest degree of care to protect plaintiff when it knew or should have known that a machine so improperly designed and constructed was inherently dangerous and that such improper design and construction might well result in serious injuries to a person or persons and more specifically to plaintiff.

The Hays and the Van Cleaves families were next-door neighbors. Mr. Van Cleave bought the machine in question for his 9-year-old son Richard to operate. While Richard was mowing his father's lawn Jimmy Hays, 8 years old, approached Richard to show him something. Richard stopped the machine. In the course of their talk Jimmy prevailed upon Richard to allow Jimmy to drive the machine. Jimmy got on the machine, mowed a short distance, put it in reverse and began backing. At that time

Jimmy's little brother, over 2 but not yet 3 years old, arrived on the scene unnoticed, and was at the rear of the machine as it was traveling backwards. The machine backed into Freddie and Freddie was knocked down. The rear of the machine passed over Freddie and caught his left foot, etc. in the whirling blade.

Plaintiff's Exhibit 8, reproduced here, demonstrates the construction of the machine.

It was equipped with a 4½ h.p. gasoline engine which delivered power to the rear wheels by means of a chain drive. The motor was mounted about the center. The steering mechanism was in front of and the operator's seat was behind the motor. The operator's feet rested on a metal housing known as the blade guard or deck. A 24-inch cutting blade, connected to the motor, revolved parallel to the ground 1¾ inches below the deck. The blade was set to revolve on a plane 3 inches above the ground. The deck enclosed the blade on the front, left and right sides of the machine, except for an opening on the right side to permit cut grass to be ejected. At the rear the deck or blade guard did not come down over the blade, but left it exposed.

Plaintiff offered expert evidence as follows: The object of a guard is safety; to guard against persons "who might get their foot down there." As long as "your blade is inside of the housing, not below it or behind it or in front of it" a guard which is part of the housing "does the job"—"not 100%"—but it is effective. The blade and deck were not contoured to each other all the way around. At the back there were square corners. When the blade was positioned parallel with the front and back wheels ¾ inch of the tip of the blade extended beyond the back end of the deck, toward the rear axle, and was exposed from the rear, with "no guard at all" covering the blade at that place. When in that position the tip of the blade would be 12 to 14 inches forward from the rear of the machine, on a line ahead of the front of the rear wheels and about even with the operator's seat. The tip of the blade was approximately ¼ inch below the blade guard "at all times," so that the front was partially exposed and the rear completely exposed. A tubular tow-hitch bar extended across the back of the machine, almost as wide and at the same level as the rear axle. Neither an adult nor a child could get his foot or leg in contact with the revolving blade at the rear of the mower unless he fell down or was knocked down at the rear of the machine and the machine thereafter backed up 12 to 14 inches to make the contact.

Plaintiff-appellant's first point is that the court erred in not allowing his expert witnesses "to testify to all of the defects of said riding power lawn mower." Objections were sustained to questions asked plaintiff's expert witnesses (1) whether the blade was covered at the front by the front part of the deck or blade guard, (2) whether in the expert's opinion the injury would have occurred if the blade had been properly guarded and covered in the rear, and (3) whether the machine as constructed was reasonably safe. When objections to these questions were sustained plaintiff made no offer of proof and failed to advise the trial court what the expert's testimony would have been if permitted to testify, or that the evidence woud have been favorable to plaintiff. Nothing is preserved for appellate review when a court rejects evidence, in the absence of an offer of proof, Howe v. St. Louis Union Trust Co., Mo.Sup., 392 S.W.2d 625; Eickmann v. St. Louis Public Service Co., Mo.Sup., 323 S.W.2d 802; 2A Missouri Digest, Appeal and Error, except in instances where the plain error rule, Civil Rule 79.04, V.A.M.R. is applicable. See Smith v. J. J. Newberry Co., Mo. App., 395 S.W.2d 472. Under the facts in this case there is no occasion to invoke the plain error rule.

Plaintiff's second point is that the court erred in sustaining Western's motion for a directed verdict; that plaintiff made a submissible case both on negligence and breach of warranty of merchantability because he proved by his expert witnesses that the machine was improperly designed and constructed and had latent dangerous defects. It is argued that the evidence showed that the blade was not shielded in the back; that the nonshielding of the blade—the lack of a proper covering for the whirling blade —was not readily apparent or easily discoverable by a purchaser in the ordinary course of business; that it was not an obvious defect, but a hidden, latent defect resulting from an improper design, making

the machine "imminently dangerous" so that "any person coming close to the machine for any kind of contact would likely have been cut, maimed or otherwise injured." The nub of plaintiff's theory of recovery is that of deceit: that the machine is so constructed that there appears to be a guard around the blade when in fact there is not.

Defendant is the supplier, the retail seller; not the manufacturer. Defendant appears to have been a mere conduit for a manufacturer whose general reputation for reliability has not been attacked. Plaintiff is not the purchaser or a member of the purchaser's family. The purchaser was not the operator, nor was any member of the purchaser's family operating the machine, nor was the operator authorized by the purchaser to operate it. The 8-year-old operator had been allowed to use the machine by the purchaser's 9-year-old son, contrary to the purchaser's instructions. The person injured was the operator's 2- or 3-year-old brother. The defense is that there was no negligence and no showing of any defect which was a proximate cause of the accident.

■ *On the question of negligence:* Plaintiff charges that defendant was negligent in selling and putting into commerce a machine negligently designed with a latent defect—improper shielding. The difficulty with this theory of liability, as pointed out by Frumer and Friedman, Products Liability, Vol. 1, § 18.04, is that in most instances design involves questions of specialized knowledge which the retailer cannot be expected to possess. This is not a case where the design is so obviously hazardous that the danger should be apparent to the retailer, or where by having demonstrated the machine the retailer should have discovered the danger in the design, or where the design was devised by[1] or represented by the retailer as a safe design appropriate to the contemplated use. According to plain-

tiff this is a case where the retailer sold a machine with a latent defect; where, according to plaintiff's brief, "a person inspecting this machine could not have found the defect for it was not an obvious defect." Plaintiff admits "that only after careful inspection were plaintiff's own experts able to point out the minuscule measurements which showed up the defects in the mower."

Plaintiff did not make a case on his theory of negligent design. Plaintiff's expert witness Root, asked whether a mower only partially guarded is "good or poor design," testified that it was not general practice; that most machines have a complete wraparound deck; that this machine was practically the only one he had seen completely open in the back, and when asked if this machine was designed "properly for safety" answered merely that it was built *during the period* when there were borderline machines made as far as safety was concerned—machines built for a price and a quick sale—with "lots of shortcomings in safety features," such as a minimum deck. Expert Kraft did not recall having seen any machines without a total enclosure of the blade and expert McCullough had not seen one with an unguarded blade. But there was *no testimony that proper design required that a mowing machine of this type have a guard at the rear of the deck housing.* Marko v. Sears, Roebuck & Co., 24 N. J.Super. 295, 94 A.2d 348 [1].

Nor did plaintiff establish that there was a latent defect. The photograph clearly demonstrates the simplicity of construction of this machine and the absence of shielding at the rear of the deck housing. The absence of a shield at that point is obvious and plain to be seen. It does not take expert testimony to establish this fact, but if so plaintiff's expert witness Kraft testified that the unguarded blade in the rear was *obvious.* A casual glance also reveals the tow-hitch bar at the rear of the machine,

[1]. It affirmatively appears by way of answer to interrogatory that Western did not, through its "engineers or designers," prepare specifications for bids in purchasing from the manufacturer.

and that the blade is located a considerable distance from the rear of the machine. Neither the fact that the tip of the blade extends ¾ inch beyond the back of the deck housing nor that the shielding did not enclose the blade at the rear constitutes a latent defect. There is no claim of defective materials or workmanship or that the machine was not suitable for ordinary grass mowing. While all power mowers are dangerous if not carefully operated, there is nothing in this case to support a finding that this machine was an imminently or inherently dangerous product, and that Western should have foreseen that injury would probably result if it was sold to a customer. Kientz v. Carlton, 245 N.C. 236, 96 S.E.2d 14 [3].

■ *On the question of implied warranty*: Plaintiff charges that defendant breached an implied warranty of merchantability. Plaintiff's theory is best stated in counsel's own words: "In fact, the deceit of placing a shield or covering near a blade but in fact not so shielding or covering the blade is the hidden, latent, dangerous defect in the machine upon which plaintiff bottoms the breach of warranty portion of its case * * *." This case arose before the effective date of the Uniform Commercial Code, Chapter 400, V.A.M.S., but at common law in the sale of a machine there was an implied warranty that it was of merchantable quality and reasonably fit for the intended use. Dubinsky v. Lindburg Cadillac Co., Mo.App., 250 S.W.2d 830; Farmers Bank of Trenton v. Ray & Son, Mo.App., 167 S.W.2d 963; Columbia Weighing Mach. Co. v. Fitzgibbons, Mo.App., 43 S.W.2d 897; Ferguson Implement Co. v. Parmer, 128 Mo.App. 300, 107 S.W. 469. Assuming that an implied warranty of merchantability arose, plaintiff had the further burden of establishing that the implied warranty extends to him; that the warranty

was breached, and that there is a causal connection between the breach and plaintiff's injury.

■ While pointing out that plaintiff was neither a consumer, purchaser nor a member of the family of a purchaser from Western, defendant concedes that privity of contract is no longer a requirement, so we will not dwell on this question but will take it that the parties agree that for the purposes of this case the implied warranty extends to plaintiff. We are not persuaded, however, that plaintiff made or can make a sufficient showing to demonstrate breach of warranty in that the mowing machine was not reasonably fit for the intended use. The test of breach of warranty of merchantability of a power lawn mower is the same as that applied in the sale of an automobile. It is not whether the machine was perfect, but whether it was reasonably suitable for the ordinary uses for which it was manufactured. Paton v. Buick Motor Division, General Motors Corp., Mo.Sup., 401 S.W.2d 446 [5]. "Breach of warranty is shown by proof of the failure of a product when the product is being put to its normal, intended use. Thus, liability on the ground of breach of a manufacturer's express warranty does not exist where it appears that the warranted product was being used, at the time of the injury in suit, for a purpose different from that for which the manufacturer intended it to be used." Hursh, American Law of Products Liability, Vol. 1, § 3:10. The intended use was that of mowing grass, with children kept away from the machine while in operation.[2] The evidence clearly showed that the machine performed its function of mowing grass in a normal and efficient manner, without untoward incident, over a period of months. That it was reasonably fit for the general purpose for which it was manufactured and sold is evident. That there

2. The operator's manual, which came with the machine, contained this caution: "Keep children and pets away from the mower while it is in operation." The purchaser specifically instructed his son Richard not to use the mower when any children were in the vicinity and not to turn the mower over to any other youngster in the neighborhood.

was no danger from the operation of the machine in the normal and reasonably-to-be-expected manner is clear. The fact that the tip of the blade extends ¾ inch beyond the rear end of the deck and that the deck did not enclose the blade at the rear does not constitute a breach of warranty. In normal operation no harm could possibly come to a person standing in the path of the machine, while backing, because of these conditions. The whirling blade could not come in contact with the foot, leg or body of any person standing in its backward path because the blade would be 12 to 14 inches from the rear hitch-bar, which would be more effective and practical as a guard than an extension of the deck around the entire circumference of the blade. The tip of the blade at the rear of its revolution is 12 to 14 inches forward of the rear hitch-bar. To require that the rear of the deck enclose the blade, under these physical conditions, would be unnecessary and unreasonable. The law requires such a machine to be constructed in a manner so as to guard and protect life and limb in normal, ordinary reasonably-to-be-expected operation; to protect against harm in reasonably foreseeable situations. The law does not require such a machine to be so constructed as to prevent every injury, regardless of circumstance or foreseeability. Specifically, it does not require a mower with a rear bumper to be so constructed as to prevent injury if the mower should be so improvidently operated as to back into, knock down and then run over an infant while he is lying prone on the ground. Defendant was not required to supply to the trade a foolproof, accident-proof power mower which could be driven safely and with impunity over the bodies of infants.

■ This leads to the question of causation. The cause of the injury was not the lack of a guard, but rather the misuse of the machine. "* * * [U]nforeseeable acts of third persons may constitute a superseding cause of the accident which will exonerate a retailer or dealer from liability." Frumer and Friedman, Products Liability, Vol. 1, § 18.07. The act of the 8-year-old operator in reversing the machine and backing it into the infant with sufficient force to knock him down and run over him, was an intervening and the efficient, proximate cause producing the injury. For that act the supplier may not be held liable. This is not a reasonably foreseeable situation. The risk of injury of the kind sustained by plaintiff is not one which defendant was required to anticipate or guard against. Appropriate here is what the Appellate Court of Illinois said in Murphy v. Cory Pump and Supply Co., 47 Ill.App.2d 382, 197 N.E.2d 849, 858, a suit against the manufacturer of a riding power lawn mower for injuries sustained by a 7-year-old child who fell in front of a mower operated by a 12-year-old child and had her leg mangled by the mower blade: "This mower would have caused no harm to plaintiff unless she, by her own acts, or by the acts of some third person, caused her to come in contact with it. Defendant should not be required to anticipate or protect against any such accident as the one which caused plaintiff's injuries. The mower functioned properly for the purposes for which it was designed; it was without any latent defect; and its functioning created no danger or peril not known to the user. As stated by Professor Bohlen in his work on Torts, and quoted in Campo v. Scofield,[3] ' "The manufacturer cannot be required to contemplate a misuse by any careless, ignorant, or incompetent person into whose hands the machine may come; injury through the medium of such an agency is neither a probable nor natural result of anything done or left undone by the maker." ' "

The judgment is affirmed.

WELBORN, C., not sitting.

HIGGINS, C., concurs.

3. 301 N.Y. 468, 95 N.E.2d 802.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

HOLMAN, P. J., HYDE, J., and WOLFE, Special Judge, concur.

HENLEY, J., not sitting.