Thomas POLK, Appellee,

v.

FORD MOTOR COMPANY, Appellant.

Ethel Lee MARSHALL, guardian, Appellee,

v.

FORD MOTOR COMPANY, Appellant.

Nos. 73–1255, 73–1256.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 8, 1975.

Decided Jan. 9, 1976.

Rehearing Denied Feb. 19, 1976.

Certiorari Denied June 1, 1976. See 96 S.Ct. 2229.

---

John M. Kilroy, Kansas City, Mo., for appellant.

Paul Scott Kelly, Jr., Kansas City, Mo., for appellee.

Before LAY, HEANEY, BRIGHT, ROSS, STEPHENSON and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

Once again this Court is called upon to forecast whether a state (this time Missouri) would apply the "second collision" or "enhanced injury" doctrine to a products liability case within its jurisdiction.

A divided panel[1] reversed a judgment in favor of plaintiffs, and this Court, deeming the issue to be of significance, reheard the case en banc.

The operative facts are well established by the record. On October 9, 1969, Thomas Polk was driving a 1970 Ford Maverick at approximately 45 to 50 miles per hour on Interstate 70 in Kansas City, Missouri. His passenger was Demple Martin. A car driven by Edward Farage in the same direction at a rate of speed estimated to be 90 to 100 miles per hour struck the Maverick at its right rear section, causing it to jump a nine-inch curb and strike a concrete retaining wall dividing the eastbound and westbound lanes. The Maverick rebounded from the retaining wall, overturned, and slid on its roof approximately 100 feet before coming to rest. The roof supports collapsed and the car burst into flames. Polk, who was thrown partially outside the car at the rear window on the driver's side, observed gasoline flowing toward him from the rear of the automobile. He was able to extricate himself from the automobile through the window. The serious burns which he suffered in the process were his only injuries. Martin was pinned in the Maverick and burned to death.

Polk and Ethel Marshall, the guardian of Demple Martin's minor children, each filed suit in the United States District Court for the Western District of Missouri against Ford Motor Company, the manufacturer of the 1970 Maverick.[2] The complaints alleged negligence in the design of the 1970 Maverick, breach of warranty of merchantability, and strict liability in tort. The case was ultimately submitted to the jury on the theory of negligent failure to design and test and on the theory of strict liability which incorporated the "second collision" or "enhanced injury" concept, following rejection by the District Court of Ford's motion for a directed verdict. Following a jury verdict awarding $200,000 to Polk and $50,000 to Marshall as guardian, Ford filed alternative motions for judgment notwithstanding the verdict and for new trial, which were overruled.[3]

The evidence at trial revealed that the 1970 Maverick used a flange-mounted fuel tank which was an integral part of the automobile's structure, its top constituting the floor of the trunk. In 1969, the year the 1970 Maverick was manufactured, all other American-made cars, excepting only Ford's low-priced compact models, used a strap-mounted fuel tank which was attached to the underbody of the car and was not an integral part of the car's structure. It was plaintiffs' contention that the flange-mounted fuel tanks were rigid on impact and more likely to produce a fire or explosion on impact from the rear, and that the collapsed roof supports contributed to the injuries of Polk and death of Martin by obstructing escape. In other words, the plaintiffs contended that the 1970 Maverick was unreasonably dangerous to the user.

The injuries complained of did not occur until after the Maverick had come to rest, upside down, and caught fire. Thus, the issue presented for decision is whether Ford may be liable to plaintiffs under the "second collision" or "enhanced injury" doctrine. On appeal, Ford contends that it was error to submit the case to the jury on this theory because (1) liability thereunder is not in accord with the law of Missouri and (2) there was insufficient evidence of defec-

---

1. Chief Judge Mehaffy was of the opinion that Missouri would not adopt the doctrine in a products liability case. Senior Judge Leonard P. Moore of the Second Circuit, sitting by designation, thought that the manufacturer could not possibly foresee or be held to guard against the factual circumstances of the collision and accident presented by this case. Judge Webster was of the view that Missouri would extend the law of strict liability to reach the facts presented.

2. Jurisdiction was based upon diversity of citizenship and an amount in controversy exceeding $10,000. *See* 28 U.S.C. § 1332. The suits were subsequently consolidated for trial.

3. An alternative motion for a credit of $10,000 against Polk's judgment was granted, and no cross-appeal was taken by Polk.

tive design. Ford further contends that the instructions were prejudicially erroneous. Additional trial errors are also asserted. We reject these contentions and affirm the judgment of the District Court.[4]

I

*Application of the Enhanced Injury Doctrine in Missouri*

In undertaking the sometimes thankless task of anticipating the predispositions of a state court on an issue of state law not yet determined, we are admonished

\* \* \* to have regard for any persuasive data that is available, such as compelling inferences or logical implications from other related adjudications and considered pronouncements. The responsibility of the federal courts, in matters of local law, is not to formulate the legal mind of the state, but merely to ascertain and apply it. Any convincing manifestation of local law, having a clear root in judicial conscience and responsibility, whether resting in direct expression or obvious implication and inference, should accordingly be given appropriate heed.

*Yoder v. Nu-Enamel Corp.,* 117 F.2d 488, 489 (8th Cir. 1941).

The second collision doctrine, enhanced injury doctrine, or defect-enhancing doctrine, as it is variously called, is the legal concept which imposes liability based on the construction or design of a product which causes enhanced or greater injuries in the course of or following an initial accident or collision brought about by some independent cause. The landmark decision *Larsen v. General Motors Corp.,* 391 F.2d 495 (8th Cir. 1968), adopted the enhanced liability doctrine in a Michigan diversity case and held:

The intended use and purpose of an automobile is to travel on the streets and highways, which travel more often than not is in close proximity to other vehicles and at speeds that carry the possibility, probability, and potential of injury-producing impacts. The realities of the intended and actual use are well known to the manufacturer and to the public and these realities should be squarely faced by the manufacturer and the courts. We perceive of no sound reason, either in logic or experience, nor any command in precedent, why the manufacturer should not be held to a reasonable duty of care in the design of its vehicle consonant with the state of the art to minimize the effect of accidents. The manufacturers are not insurers but should be held to a standard of reasonable care in design to provide a reasonably safe vehicle in which to travel.

391 F.2d at 502–03.

A growing number of courts have adopted the enhanced liability doctrine,[5] but other courts have either rejected or restricted its application.[6] The quantum

---

4. The Honorable William R. Collinson, United States District Judge for the Western District of Missouri.

5. *Nanda v. Ford Motor Co.,* 509 F.2d 213 (7th Cir. 1974) (Illinois law); *Turcotte v. Ford Motor Co.,* 494 F.2d 173 (1st Cir. 1974) (Rhode Island law); *Ford Motor Co. v. Zahn,* 265 F.2d 729 (8th Cir. 1959) (Minnesota law); *Grundmanis v. British Motor Corp.,* 308 F.Supp. 303 (E.D.Wis.1970) (Wisconsin law); *Dyson v. General Motors Corp.,* 298 F.Supp. 1064 (E.D. Pa.1969) (Pennsylvania law); *Cronin v. J. B. E. Olson Corp.,* 8 Cal.3d 121, 104 Cal.Rptr. 433, 501 P.2d 1153 (1972); *Friend v. General Motors Corp.,* 118 Ga.App. 763, 165 S.E.2d 734 (1968); *Frericks v. General Motors Corp.,* 274 Md. 288, 336 A.2d 118 (1975); *Johnson v.*

American Motors Corp., 225 N.W.2d 57 (N.D. 1974); *Mickle v. Blackmon,* 252 S.C. 202, 166 S.E.2d 173 (1969); *Arbet v. Gussarson,* 66 Wis.2d 551, 225 N.W.2d 431 (1975); *cf. Bolm v. Triumph Corp.,* 33 N.Y.2d 151, 350 N.Y.S.2d 644, 305 N.E.2d 769 (1973) (defect must be latent).

6. *Evans v. General Motors Corp.,* 359 F.2d 822 (7th Cir.), *cert. denied,* 385 U.S. 836, 87 S.Ct. 83, 17 L.Ed.2d 70 (1966) (Indiana law); *Walker v. International Harvester Co.,* 294 F.Supp. 1095 (W.D.Okl.1969) (Oklahoma law); *Shumard v. General Motors Corp.,* 270 F.Supp. 311 (S.D.Ohio 1967) (Ohio law); *Willis v. Chrysler Corp.,* 264 F.Supp. 1010 (S.D.Tex. 1967) (Texas law); *Kahn v. Chrysler Corp.,* 221 F.Supp. 677 (S.D.Tex.1963) (Texas law);

of opposing cases alone does not aid our inquiry since (1) some of the cases cited have rejected the doctrine as applied to the particular facts before them and (2) some have considered the doctrine under various theories of recovery, *i. e.,* common law negligence, breach of implied warranty, and strict liability in tort.[7] The critical issue in negligence cases is whether the manufacturer has a duty to design its cars so that injuries to occupants involved in accidents will not be enhanced because of some defect in the automobile. Courts rejecting the theory have usually done so by declining to impose a duty to design against enhancing injuries and declaring (1) the particular collision was not reasonably foreseeable by the manufacturer or (2) a collision is not a use for which the auto was intended.[8]

In 1969, the Supreme Court of Missouri embraced the view of strict liability in its entirety for defective products set forth in Restatement (Second) of Torts § 402A (1965).[9] *Keener v. Dayton Electric Manufacturing Co.,* 445 S.W.2d 362, 364 (Mo.1969). In succeeding years the courts of Missouri have reinforced that commitment at every opportunity.[10] Most recently, the Missouri Supreme Court extended the protection of the rule of strict liability to bystanders, thus making a complete break with any vestigial concepts of privity derived from theories of strict liability based upon warranty. *Giberson v. Ford Motor Co.,* 504 S.W.2d 8 (Mo.1974).

It is true that some pre-*Keener* cases speak of the manufacturer as not being "an insurer", *Stevens v. Durbin-Durco,*

7. *Rogers v. Ford Motor Co.,* 191 So.2d 713 (La. App.1966); *Keahl v. General Motors Corp.,* CCH Products Liability Reporter ¶¶ 5995, 6042 (Mich.Cir.Ct.1968); *Walton v. Chrysler Motor Corp.,* 229 So.2d 568 (Miss.1969); *Snipes v. General Motors Corp.,* CCH Products Liability Reporter ¶ 6037 (Ohio C.P.1968); *Murphy v. Plymouth Motor Corp.,* 3 Wash.2d 180, 100 P.2d 30 (1940).

7. Cases are collected in Annot., 42 A.L.R.3d 560 (1972). *See also, for example, Volkswagen of America, Inc. v. Young,* 272 Md. 201, 321 A.2d 737 (1974), holding the strict liability theory of Restatement (Second) of Torts § 402A inappropriate in a design defect situation.

8. *E. g., Evans v. General Motors Corp.,* 359 F.2d 822 (7th Cir.), *cert. denied,* 385 U.S. 836, 87 S.Ct. 83, 17 L.Ed.2d 70 (1966); *Campo v. Scofield,* 301 N.Y. 468, 95 N.E.2d 802 (1950). *Evans* has been criticized by both the commentators and the courts, *see Dyson v. General Motors Corp.,* 298 F.Supp. 1064, 1067 n. 4 (E.D.Pa.1969), and *Larsen v. General Motors Corp.,* 391 F.2d 495, 498 (8th Cir. 1968).

9. § 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer.

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

10. Other cases expanding on *Keener* and Missouri's application of § 402A include: *State ex rel. Deere & Co. v. Pinnell,* 454 S.W.2d 889 (Mo.1970) (en banc) (single act long-arm statute reaches foreign manufacturer whose defective product injures user in Missouri); *Williams v. Ford Motor Co.,* 494 S.W.2d 678 (Mo. App.1973) (§ 402A is the law of Missouri); *State ex rel. Apco Oil Corp. v. Turpin,* 490 S.W.2d 400 (Mo.App.1973) (foreign manufacturer may be impleaded as third-party defendant by dealer who is sued by Missouri consumer for injuries caused by manufacturer's product); *Brissette v. Milner Chevrolet Co.,* 479 S.W.2d 176 (Mo.App.1972) (defective product need not be produced before the trial court in products liability case based on breach of warranty); *Lifritz v. Sears, Roebuck and Co.,* 472 S.W.2d 28 (Mo.App.1971) (seller of defective product reasonably dangerous to user or consumer is liable for personal injuries to user or consumer); *Williams v. Ford Motor Co.,* 454 S.W.2d 611 (Mo.App.1970) (contributory negligence no defense to strict liability in tort). *See also Rockett v. Pepsi Cola Bottling Co.,* 460 S.W.2d 737 (Mo.App.1970).

*Inc.*, 377 S.W.2d 343, 346 (Mo.1964), and as not "required to contemplate \* \* \* misuse", *Hays v. Western Auto Supply Co.*, 405 S.W.2d 877, 884 (Mo.1966). But these cases found their basis in the law of simple negligence and implied warranty, not strict liability, and in *Keener* the court expressly turned to the Restatement to avoid such confining concepts. 445 S.W.2d at 364.

In a post-*Keener* case, the Missouri Court of Appeals held that under appropriate facts *misuse* may fall within the area of reasonable anticipation. In *Higgins v. Paul Hardeman, Inc.*, 457 S.W.2d 943, 948 (Mo.App.1970), the court said:

> *Keener* \* \* \* directs this issue [of misuse] to be submitted in language hypothesizing the use of the article "in a manner reasonably anticipated". The statement to the effect defendants are not liable for injuries resulting from abnormal use is only true if such abnormal use was not reasonably foreseeable. "The issue is one of foreseeability, and misuse may be foreseeable." Products Liability, Frumer & Friedman, § 15.01. Foreseeable use may be different from its intended use and includes any particular use which should be known to a reasonably prudent manufacturer.

In each post-*Keener* case, the Missouri courts have reaffirmed their purpose, originally stated in *Keener*, "to insure that the costs of injuries resulting from defective products are borne by the manufacturers [and sellers] that put such products on the market rather than by the injured persons who are powerless to protect themselves." *Keener, supra*, 445 S.W.2d at 364, *quoting Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57, 27 Cal.Rptr. 697, 701, 377 P.2d 897, 901 (1962); *see Giberson v. Ford Motor Co., supra*, 504 S.W.2d at 9–10.

We think it is clear that under Missouri law of strict liability, as expressed in *Higgins, supra*, the critical element is the presence of a defect making the product unreasonably dangerous when put to a use reasonably anticipated. In other words, the *Keener* path is not so much the path of "duty" but is rather a broader path which holds that "[t]he intended use doctrine necessarily includes foreseeable consequences of (unintentional) misuse." *Hoppe v. Midwest Conveyor Co.*, 485 F.2d 1196, 1201 (8th Cir. 1973) (applying Missouri law).

Applying these principles espoused by the Missouri courts, we have no difficulty in concluding that under Missouri law a manufacturer may be held liable for those injuries shown to have been caused or enhanced by a defective condition of a product which was being used in a manner reasonably anticipated in the course of or following an initial accident brought about by some independent cause.

## II

### Sufficiency of the Evidence

■ The District Court refused Ford's motion for directed verdict and instructed the jury on the theory of enhanced injuries caused by defects in manufacture or design. Appellant contends that even if Missouri would recognize the second collision or enhanced injury doctrine, the evidence was insufficient to submit the case to the jury on this theory. Specifically, appellant contends that there was no evidence from which a jury could find that the 1970 Maverick was defectively designed in light of the "state of the art" in 1969. *See Larsen v. General Motors Corp., supra*, 391 F.2d at 502–03.

Experts testified that strap-mounted tanks were in general use by manufacturers in 1969 when Ford designed the flange-mounted tank for the 1970 Maverick, and that the use of a flange mounting caused the tank to rupture under the conditions involved in this accident. It was conceded that strap mounting could have been used for the installation of the fuel tank on the 1970 Maverick involved in the accident. Experts testified that the roof supports were inadequately and defectively designed, causing the exit routes to be seriously impeded after the accident and thus en-

hancing the injuries sustained by the occupants. While the Maverick was struck from the rear by a vehicle traveling at great speed, its own speed made the relative motion impact one of 30–40 miles per hour. The evidence was that the car, while it skidded for some distance after it overturned, rolled over only once. There was substantial evidence that all of the proven injuries occurred as a result of the fire and difficulty in exiting.

Our test of the sufficiency of the evidence is as follows:

> [I]n passing upon the motion for judgment, the trial court and this court are (1) to consider the evidence in the light most favorable to the plaintiffs as the parties prevailing with the jury; (2) to assume that all conflicts in the evidence were resolved by the jury in favor of the plaintiffs; (3) to assume as proved all facts which plaintiffs' evidence tends to prove; (4) to give the plaintiffs the benefit of all favorable inferences which may reasonably be drawn from the facts proved; and (5) to deny the motion if, reviewing the evidence in this light, reasonable men could differ as to the conclusions to be drawn from it.

*Hanson v. Ford Motor Co.,* 278 F.2d 586, 596 (8th Cir. 1960). Applying this test, we conclude that the evidence was sufficient to submit the case to the jury on the doctrine of enhanced injury.[11]

### III

### *The Instructions*

 Appellant contends next that the instructions to the jury were prejudicially erroneous in that, contrary to the law of Missouri, the instructions permitted the jury to award damages for *all* of the injuries suffered in the accident and not merely the enhanced injuries due to the defect in manufacture. Appellant argues (1) that the court's instruction did not require the jury to determine "what injuries to plaintiff and plaintiff's decedent were attributable to the alleged design defects in the 1970 Maverick" and (2) that appellant and the driver of the other automobile were treated as joint tortfeasors by the language of the instruction which allowed recovery of damages which "were proximately caused or contributed to be caused" by the defective condition of the automobile.

The instructions, read in context and as a whole, do not permit such latitude to the jury. The District Court charged the jury:

> Plaintiffs do not contend that defendant in any way caused or contributed to cause the vehicles to collide. However, plaintiffs do contend that once the collision occurred, that the design features of the fuel tank and roof supports of the Maverick, which plaintiff Polk was driving, caused the plaintiffs to experience damages which they would not have sustained had the vehicle's designed feature of which they complained not existed.

> Accordingly, plaintiffs must prove by a preponderance of the evidence that the design of the fuel tank and roof supports was defective, and that *said defects caused them to sustain damages which they would not have sustained except for that design.*

> If you find that the defective condition of the automobile by the defendant has been established, you will then determine whether such defective condition was the proximate cause of the injury and damages complained of, for even if a defective condition of the automobile on the part of the defendant is established, *there can be no recovery by the plaintiffs unless it ap-*

---

11. The New York Court of Appeals has recently adopted a "latent defect in design" test under which the question is whether such defect, to the reasonably prudent manufacturer, creates a foreseeable risk of harm. *Bolm v. Triumph Corp.,* 33 N.Y.2d 151, 350 N.Y.S.2d 644, 305 N.E.2d 769 (1973). Assuming without deciding that Missouri courts would apply this engraftment, the defects complained of here were not clearly obvious to the user, and there was sufficient evidence upon which to submit the issue of latency to the jury.

*pears that the injuries and damage complained of were proximately caused or contributed to be caused by the act or acts constituting the defective condition of the automobile.*

A proximate cause is one that necessarily sets in operation the factors which accomplish the damage complained of. *The plaintiffs must prove that the damages claimed were the direct result of the design features claimed and that the fire and resulting damages would not have occurred except for the design features claimed.*

This does not mean the law recognizes only one proximate cause of an injury or damage consisting of only one factor or thing or the conduct of only one person. On the contrary, many factors or things or the conduct of two or more persons may operate at the same time, either independently or together, to cause injury or damage, and in such a case, each may be the proximate cause. (emphasis added)

The appellees observe correctly that the negligent driver of the other car was a joint tortfeasor with Ford in respect to the enhanced injuries since there was no sufficient intervening cause to limit the driver's liability. On the other hand, Ford was not a joint tortfeasor in respect to any damages occurring prior to the fire; it is only the *enhanced* injuries for which Ford may be held liable in this case. *Larsen v. General Motors Corp.,* supra, 391 F.2d at 503; *see Passwaters v. General Motors Corp.,* 454 F.2d 1270, 1273–74 (8th Cir. 1972).

We think a fair reading of the instruction quoted above is that there may be recovery only for those injuries which were caused by the defective design and which would not have been sustained but for the design. The "contributed to be caused" language merely gives recognition to the fact that acts by others could set in motion a chain of circumstances under which the defective condition might produce or cause the enhanced injuries. The evidence was such that the jury could properly have found that all of the injuries were suffered after the car came to rest upon its roof and caught fire.

■■■ A more troublesome attack upon the instructions is found in appellant's argument that the District Court failed to require the jury to find, as a condition precedent to liability, that at the time of the injuries the 1970 Maverick was being used "in a way it was intended to be used." This is not a correct statement of the law of Missouri. *See* Point I, *supra.* The law of Missouri permits recovery despite unintentional misuse of the manufactured product, but only if that misuse could reasonably have been anticipated (foreseen) by the manufacturer.[12] While the District Court correctly instructed the jury on the other essential elements of strict liability,[13] it did not in express terms require the jury to find that the Maverick was defective and therefore dangerous *when put to a use reasonably anticipated.* Such a finding was mandated by *Keener v. Dayton Electric Manufactur-*

---

12. In *Passwaters v. General Motors Corp.,* 454 F.2d 1270, 1275 n. 3 (8th Cir. 1972), applying Iowa law, we said: "The Fourth Circuit has cogently observed that 'intended use' is simply a convenient adaptation of the test of reasonable foreseeability. *Gardner v. Q.H.S., Inc.,* 448 F.2d 238 (4 Cir. 1971)."

13. The District Court instructed the jury as follows:

The plaintiffs must establish three essential elements in order to recover, which are as follows:

First, that at the time the defendant, Ford Motor Company sold the car to its dealer,

Southtown Motors, it was in a defective condition unreasonably dangerous to the consumer or user.

Second, that the 1970 Ford Maverick in question was expected to and did reach the ultimate consumer without substantial change in the condition in which the defendant sold it.

Third, that the defective condition in the said 1970 Ford Maverick proximately caused or contributed to cause the injury to the plaintiff, Thomas Polk, and the death of Demple Martin.

*ing Co., supra,* 445 S.W.2d at 366, and failure to so instruct the jury was held to be "prejudicially erroneous", requiring a new trial.

In a second collision case under Missouri law, the element of foreseeability (reasonable anticipation) of misuse, becomes more significant. The manufacturer is entitled to have a jury consider whether or not the factors which precipitated the accident and injuries were of such nature that the manufacturer should reasonably have anticipated, at least in general terms, such use of the automobile under such circumstances.[14] While a Missouri court has held that a manufacturer may be held in strict liability for the *foreseeable* consequences of misuse,[15] we find no support for the proposition that *any* collision is foreseeable or that *any* misuse will automatically be covered without reference to its foreseeability. For example, a manufacturer cannot be held liable for producing a car which will not withstand a fall from a cliff. It is the test of "reasonably anticipated" applied in *Keener* which keeps the application of strict liability in second collision situations from making the manufacturer an absolute insurer and thus producing an absurd and unjust result. Whether or not the "use" involved in this case was a reasonably anticipated one was sharply disputed by the parties.

When the instruction was offered without the *Keener* language, however, Ford made only a blanket objection that the instruction was not the law of Missouri. Fed.R.Civ.P. 51 provides that "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating *distinctly* the matter to which he objects

and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury." (emphasis added). The form of objection could hardly be said to be "sufficiently specific to bring into focus the precise nature of the alleged error." *Palmer v. Hoffman,* 318 U.S. 109, 119, 63 S.Ct. 477, 483, 87 L.Ed. 645 (1943). *See* 9 C. Wright & A. Miller, Federal Practice and Procedure § 2554 (1971), and cases cited therein. We therefore examine the instruction to see whether the plain error rule applies. *See* Fed.R.Civ.P. 51; *O'Malley v. Cover,* 221 F.2d 156, 159 (8th Cir. 1955). *See also* 9 C. Wright & A. Miller, Federal Practice and Procedure § 2558, at 672 (1971).

In *Keener,* only the theory of strict liability was submitted to the jury. In this case, the issue of negligent failure to test and detect design defects in the flange-type assembly was also submitted to the jury. In its verdict directing instruction on this issue, the court did impose a requirement that the automobile be "unreasonably dangerous *under foreseeable conditions*" (emphasis added). In describing the theory of strict liability, the court explained plaintiffs' contention that the 1970 Maverick was defective "in that it subjected people in that car to unreasonable risks of injury *in the event of a collision of the kind that was described in this evidence.*" (emphasis added). The court then said: "If you don't find that that defective condition existed and the plaintiff has not convinced you of that, then on that issue your verdict should be for the defendant."

We think this instruction, while it did not use the precise *Keener* terminology, required the jury to assess whether the automobile was unreasonably dangerous under the circumstances of the accident,

---

**14.** In *Eshbach v. W. T. Grant's & Co.,* 481 F.2d 940, 943 (3rd Cir. 1973), the court said:

In actions brought pursuant to § 402A "[t]he duty of a manufacturer or supplier is limited to foreseeing the probable results of the normal use of the product or a use which can be reasonably anticipated." *Kaczmarek v. Mesta Machine Company,* 463 F.2d 675 at

679 (3rd Cir. 1972). Thus, the proper limits of responsibility for the defendant-seller here is whether the "use" to which the product was put was intended or foreseeable (objectively reasonable) by the defendant.

**15.** *Higgins v. Paul Hardeman, Inc.,* 457 S.W.2d 943 (Mo.App.1970); *see Hoppe v. Midwest Conveyor Co.,* 485 F.2d 1196, 1201 (8th Cir. 1973).

that is to say, whether it was defective and therefore dangerous when put to a use reasonably anticipated.[16] "Unreasonable risk", as used in *Larsen* and in the District Court's instruction read as a whole, is a term which permits the jury to take into account the improbability of the circumstances in assessing the responsibility of the manufacturer to provide reasonable safeguards against injury under such circumstances.[17] Thus viewed, we cannot say that the instructions given require the application of the plain error rule.[18]

## IV

### Other Trial Errors

We have considered other assignments of trial error and find them to be without merit.

### A.

 Appellant contends that the District Court erred in permitting plaintiffs' counsel to cross-examine its expert witness with respect to model changes which occurred in Mavericks manufactured subsequent to the 1970 model. The District Court had ruled in advance that testimony could be received which showed Ford had ceased using flange-mounted fuel tanks in favor of strap-mounted tanks because "it would be a question of they had gone back to a prior type and had abandoned this type and that might very possibly be considered probative evidence that their experience with the flange-mounted tank was unsatisfactory, and I think it's a proper subject for cross-examination of an expert witness." Faced with this ruling, which we think was within the trial

**16.** *See* Wade, Strict Tort Liability of Manufacturers, 19 Sw.L.J. 5, 14–15 (1965):

Section 402A of the *Restatement* sets forth two requirements for liability—that the product be "in a defective condition" and that it be "unreasonably dangerous." The requirement of a defective condition is easily understandable in the usual situation in which a particular article has something wrong with it. Because of a mistake in the manufacturing process, for example, the product was adulterated or one of its parts was broken or weakened or not properly attached, and it did not function as expected. If this occurs, there is no need of proving fault in letting it come to be in that condition. But a defect may be only a minor one, and the *Restatement* indicates that strict liability is not to be imposed unless it makes the product unreasonably dangerous.

The more difficult problem arises with a product which was made in the way it was intended to be made and in the condition planned and which yet proves to be dangerous. Is such an article defective? Perhaps it can be said to be improperly designed, and the bad design may be called a defect. But then the design is "defective" only because it made the product unreasonably dangerous. Or what of a product to which a certain number of people are allergic. Is it defective? This too depends upon whether it is unreasonably dangerous. In cases of this general type the phrase "defective condition" has no independent meaning, and the attempt to use it is apt to prove misleading. The only real problem is whether the prod-

uct is "unreasonably dangerous," because "defective condition," if it is to be applied at all, depends on that. Strict liability is appropriate for these cases, and it would be better in them not to refer to any requirement of defectiveness. As a matter of fact, even in the first type of cases in which the article was defective because of something that went wrong in the manufacturing process, the true problem in the end is whether that defect makes the product unreasonably dangerous. (footnotes omitted)

**17.** As the Fourth Circuit recognized in *Dreisonstok v. Volkswagenwerk, A.G.,* 489 F.2d 1066, 1073 (4th Cir. 1974): "Moreover, in a 'crashworthy' case, it is necessary to consider the circumstances of the accident itself."

**18.** The author of this opinion, while dissenting from the panel opinion rejecting the second collision doctrine under Missouri law, originally thought that failure to follow the *Keener* formulation in haec verbae mandated reversal. (*See* the dissenting opinion of Judge Ross.) No other Missouri courts have so held, and this Circuit has declined the opportunity to do so. *See Higgins v. Paul Hardeman, Inc.,* 457 S.W.2d 943, 946 n. 1 (Mo.App.1970); *Maryland Casualty Co. v. Dondlinger & Sons Construction Co.,* 420 F.2d 1368, 1371 (8th Cir. 1970). A more careful consideration of the full instructions convinces him that no manifest injustice has occurred as a result of such variances and that the jury did have an opportunity to consider the "use" involved in terms which did not make the manufacturer of the automobile an insurer against all injury.

court's discretion,[19] defense counsel elected to bring out the fact that flange mounting had been discontinued, and plaintiffs' counsel in cross-examination pursued the subject thus opened to establish that Ford had returned to the strap-mounted design. Objections to such testimony, even if meritorious, were thereby waived.

### B.

Appellant contends that plaintiffs' expert witnesses should not have been permitted to express their opinions on the defective nature of the roof supports because there were no facts in evidence nor an independent investigation upon which such an opinion could be based. There must, of course, be sufficient facts already in evidence or disclosed by the witness as a result of his investigation to take such testimony out of the realm of guesswork and speculation. *Gilbert v. Gulf Oil Corp.,* 175 F.2d 705, 709 (4th Cir. 1949). *See* Fed.R.Evid. 703.

In this case, experts testified for plaintiffs that the roof supports were defective and caused or contributed to cause the injuries by making escape difficult by collapsing. They based their opinions in part on the evidence that the automobile rolled over only once; other factors were considered which need not be repeated here. The qualification of experts and the admissibility of their opinions lies in the sound discretion of the District Court. *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Management, Inc.,* 519 F.2d 634, 642 (8th Cir. 1975); *Gisriel v. Uniroyal, Inc.,* 517 F.2d 699, 701–02 (8th Cir. 1975). Indeed, the newly adopted Federal Rules of Evidence make it clear that an expert may give his conclusions without prior disclosure of the underlying facts. Fed.R. Evid. 705. The weakness in the underpinnings of such opinions may be developed upon cross-examination and such weakness goes to the weight and credibility of the testimony. We have reviewed the testimony complained of and find appellant's contention to be without merit. We also reject appellant's additional contention that the court erred in permitting the experts to testify concerning other accidents involving flange-mounted fuel tanks on 1970 Mavericks. Such testimony was used to establish the experience of the experts under substantially similar circumstances. Again, the weight of such testimony was for the jury, and the trial court did not abuse its discretion in permitting it in evidence.

### C.

We have considered the remaining contentions and find them likewise to be without merit. The use of a six-person jury in federal court under local rule was expressly approved in *Colgrove v. Battin,* 413 U.S. 149, 93 S.Ct. 2448, 37 L.Ed.2d 522 (1973); procedural matters are governed under federal law. *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). Upon a full review of the record, we discern no accumulation of errors which in the aggregate prevented appellant from receiving a fair trial.

The judgment is affirmed.

ROSS, Circuit Judge (concurring in part and dissenting in part).

I concur in all of Judge Webster's opinion except his determination that the failure to give the proper instructions did not constitute plain error.

I agree that *Keener v. Dayton Electric Manufacturing Co., supra,* mandates the giving of instructions requiring the jury to find that the Maverick was defective and therefore dangerous when put to a use reasonably anticipated. As Judge Webster points out, the failure to give such an instruction was held to be prejudicially erroneous in *Keener.*

In the original opinion Judge Webster filed a dissent in which he included the following paragraph:

Appellees contend that appellants failed to preserve this assignment of error, relying upon Fed.R.Civ.P. 51. I

**19.** See Fed.R.Evid. 407.

disagree. Defense counsel objected to giving any instruction on enhanced injury, contending this was not the law of Missouri. I think that objection was sufficient to preserve the point. In any event, while a trial court does not commit reversible error when it assumes as true the existence of an undisputed or uncontradicted fact and omits it from its instruction, *Celatron, Inc. v. Cavic Engineering Co.,* 432 S.W.2d 794, 799 (Mo.App.1968), the evidence at trial made foreseeability a sharply disputed factual issue. By treating it as conceded, the trial court removed the issue from the jury's consideration and thereby affected the substantial rights of the defendants in a manner inconsistent with substantial justice. *See* Fed.R.Civ.P. 61; *Edwards v. Mayes,* 385 F.2d 369, 373 n. 1 (4th Cir. 1967) (failure to instruct that driving at excessive speed was negligence per se constituted plain error requiring reversal despite lack of adequate objection by appellants); *Mazer v. Lipschutz,* 327 F.2d 42 (3d Cir. 1964) (erroneous instruction on vicarious liability was plain or fundamental error requiring new trial despite appellants' failure to object thereto). *See also* 9 C. Wright & A. Miller, Federal Practice and Procedure § 2558, at 672–74 n. 41 (1971). (Footnotes omitted.)

I consider that paragraph to be a proper statement of the law; that the failure to give the proper instruction was plain error; that the alternative instructions stressed by Judge Webster in this opinion do not cure that plain error in that they fail completely to refer to a "use reasonably anticipated" by the manufacturer.

I would reverse and remand for a new trial for the reasons stated in Judge Webster's original dissent.